480 A.2d 266

**COMMONWEALTH of Pennsylvania**

v.

**Russell George CROLL, II, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 1, 1983.

Filed July 6, 1984.

Howard N. Stark, Allentown, for appellant.

Robert F. Hawk, Assistant District Attorney, Butler, for Com., appellee.

Before ROWLEY, WIEAND and HESTER, JJ.

ROWLEY, Judge:

This is a direct appeal from the judgment of sentence entered in the Court of Common Pleas of Butler County, following appellant's conviction for sales of obscene materi-

al. Although we affirm appellant's conviction, we vacate the judgment of sentence and remand for resentencing.

On March 10, 1981, Pennsylvania State Police Officers Joseph Rozum and Robert Martin entered the Adult Book Store in Penn Township, Butler County. In the rear of the store, they observed motion picture booths. The door of each booth bore a placard indicating the type of film shown therein. Officer Rozum entered one such booth, deposited twenty-five cents into a film projector, and watched performances of sexual acts between a woman and various animals. Officer Martin then viewed the film.

Subsequently, the officers approached appellant. Appellant and another individual, Robert Katz, were standing behind the sales counter; appellant was instructing Katz on the use of the cash register. When Officer Rozum expressed interest in the movie he had seen, appellant removed the film, wrapped in cellophane, from a display case. At that point, another individual pointed to a different film on display, and within appellant's presence, explicitly described its sexual content, recommending it to the officers. Thereupon appellant removed the recommended film and handed it to Officer Rozum, who purchased it. Payment was tendered to appellant, who in turn handed the money to Katz to be deposited in the cash register. Officer Rozum also questioned appellant concerning the availability of women, or items involving teenagers, on the premises. Appellant stated that neither was available.

Following inquiry about a third film located in the display case, appellant proffered the film to Officer Martin. This film was similarly purchased. On March 31, 1981, Officer Rozum filed a criminal complaint against appellant, charging him with sales of obscene and other sexual materials, and criminal conspiracy.[1] Although the magistrate had not viewed the films in question, a summons was issued and served on appellant. Represented by counsel, appellant appeared at the arraignment; no arrest warrant was issued. Formal arraignment was waived, and a trial date was set.

1. Subsequently, the conspiracy charge was nol prossed.

Prior to trial, appellant filed a motion to quash the information. Following an evidentiary hearing, the motion was denied. On September 28, 1981, appellant was tried before the Honorable George P. Kiester and a jury, and found guilty. Motions for a new trial or arrest of judgment were timely filed, and denied following oral argument. On April 19, 1982, appellant was sentenced to a two-year term of probation. One of the conditions of probation required payment of "a penalty of $10,000.00 for the use of the County of Butler." One week later, a motion to modify the sentence was filed. Prior to the trial court's disposition of that motion, an appeal was taken to this court.[2]

On appeal, appellant claims that judgment should be arrested on the grounds that: (1) the statute is unconstitutional, (2) that the complaint was accepted and the summons issued without a showing of probable cause and (3) that the evidence was insufficient to support the verdict. In the alternative, appellant argues that he is entitled to a new trial because of errors committed during the selection of the jury and during the trial court's instructions to the jury. Finally, appellant contends that he is entitled to a new sentencing hearing. Finding merit in only the last of appellant's complaints, we will affirm the conviction but remand for resentencing.

## I. MOTION IN ARREST OF JUDGMENT

### a. Constitutionality

■ Initially, appellant argues that the obscenity statute is unconstitutionally vague. This question has, however,

2. Appellant's motion to modify sentence was denied on July 26, 1982, some three months after appellant had filed an appeal to this court. A second appeal was then filed on August 23, 1982. In that Notice of Appeal, appellant indicated that the appeal was taken from the April 19, 1982 judgment of sentence and the July 26, 1982 order denying the motion to modify. We note this here merely to point out the procedural inaccuracy of such an action. Defense counsel quite properly filed an appeal within thirty days following entry of the judgment of sentence, despite the pendency of the motion to modify sentence. The second Notice of Appeal was, then, superfluous; at the time the motion to modify was denied, the trial court no longer had jurisdiction in this matter, given the filing of the original Notice of Appeal.

been considered and decided adversely to appellant by this Court. *See Commonwealth v. Doe,* 316 Pa.Super. 1, 462 A.2d 762 (1983). Appellant's argument was ably refuted by Judge Johnson in that case. Appellant concedes that the Pennsylvania Act was amended "with slavish adherence to" the decision of the United States Supreme Court in *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, *reh. denied,* 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973). In spite of that, he argues that "obscenity is impossible of definition" and that we should, therefore, "set a higher standard for the State of Pennsylvania in obscenity criminal matters." Art. I, § 7 of the Pennsylvania Constitution provides, inter alia, that "[t]he free communication of thoughts and opinion is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, *being responsible for the abuse of that liberty."* The underlined portion of the section has been a part of Pennsylvania's Constitutional heritage since 1790. Former President Judge Cercone of this Court, in discussing this provision, although in an equity proceeding for an injunction against the sale and distribution of obscene materials, said:

Since the case of *Commonwealth v. Sharpless,* 2 S. & R. 91 (1815) the courts of Pennsylvania have assumed that the publication of obscenity was a crime indictable at common law, part of our received jurisprudence, and hence not protected from prosecution for abuse of the liberty of free expression. We have found no authority in this Commonwealth that extends to obscene matter the limited right to exemption from prosecution or punishment for its publication, which right many other forms of expression enjoy under the second element of our Constitution's free speech guarantee. Nor have we found authority in our case law which holds that matter cannot be enjoined from *further* publication once it has been determined to be offensive, where that determination has been made by a jury applying a definition of obscenity the vagueness of which is not contested.

It follows therefrom that there is in Pennsylvania no fundamental right to protection from prosecution for the publication of matter abusive of the right to free expression, viz. obscene matter. In short, obscenity does not enjoy the full protection of Art. I, § 7 of the Pennsylvania Constitution of 1874.

*Long v. 130 Market St. Gift & Novelty, etc.*, 294 Pa.Super. 383, 400–401, 440 A.2d 517, 526 (1982) (Citations and footnotes omitted).

It is clear to us, and we therefore hold, that Art. I, § 7 of the Pennsylvania Constitution affords no greater protection from prosecution for the distribution and sale of obscene materials than do the First and Fourteenth Amendments to the United States Constitution.

### b. *Probable Cause*

■ Next, appellant contends that his motion to quash should have been granted because the District Justice failed to view the films before accepting the Complaint and issuing the summons. As appellant notes, Pa.R.Crim.P. 134, directs the issuing authority to ascertain that probable cause exists, before issuance of a summons or arrest warrant.[3] In determining whether probable cause exists to support prosecution under the obscenity statute, 18 Pa. Cons.Stat. § 5903, a judicial officer *must*, appellant contends, independently review the suspect materials to decide whether they are in fact obscene. Because this was not done here, he argues, the magistrate could not properly issue the summons.

We note that a preliminary hearing was conducted on May 6, 1981, at which time the issuing magistrate concluded

---

**3.** Judge Kiester focused on the fact that a warrant had not been issued for appellant's arrest, distinguishing between Rule 102 (Use of Summons or Warrant of Arrest in Court Case) and Rule 119 (Requirements for Issuance of Arrest Warrants). Because Rule 119 explicitly states that no arrest warrant shall issue but upon probable cause, and Rule 102 is silent as to probable cause, the trial judge concluded that Pennsylvania requires a finding of probable cause only prior to issuance of arrest warrants. In light of the language of Rule 134, we find this analysis unpersuasive.

that the Commonwealth had established a prima facie case and held appellant for court.[4] Thus, this case is analogous to *Commonwealth v. Krall*, 452 Pa. 215, 304 A.2d 488 (1973). In *Krall*, a criminal complaint charging the defendant with burglary was filed before a justice of the peace, and an arrest warrant obtained. A preliminary hearing was then held before the same judicial officer, and the case was held for court. An "Application to Dismiss Charges" was subsequently filed in which the defendant alleged that the complaint and arrest warrant failed to provide the issuing authority with information from which she could have made a neutral and independent determination of probable cause for arrest. Following denial of the motion, the defendant was indicted, tried, and convicted of the burglary.

On appeal, Krall continued to assert the illegality of the arrest warrant, contending that all the proceedings which followed, including the trial and conviction, were therefore rendered nugatory. Recognizing that the "mere fact that the arrest of an accused person is unlawful is of itself no bar to a prosecution on a subsequent indictment or information, by which the court acquires jurisdiction over the person of the defendant," the Court refused to vacate the judgment of sentence. *Commonwealth v. Krall*, 452 Pa. at 219, 304 A.2d at 490 (Citations omitted.) As the Court concluded, once the issuing authority conducted a preliminary hearing, heard the Commonwealth's witnesses, and determined in a neutral and independent manner that a prima facie case was established, the accused could not logically show that his detention (or his release on bail) was not supported by probable cause. *In accord, see Commonwealth v. Walker*, 243 Pa.Super. 388, 365 A.2d 1279 (1976), and *Commonwealth v. Mills*, 235 Pa.Super. 173, 340 A.2d 900 (1975).

**4.** The preliminary hearing transcript has not been certified to this court as part of the original record. However, Judge Kiester's Memorandum and Order, filed on September 23, 1981, which disposed of appellant's motion to quash, refers to the preliminary hearing, and its result. As neither the Commonwealth nor appellant has disputed the facts as set forth therein, we rely on that statement of events.

In the instant case, appellant voices no objection to the manner in which the preliminary hearing was conducted, nor to the magistrate's finding that the Commonwealth had made out a prima facie case.[5] In light of *Krall, supra,* appellant will not now be heard to complain about the legitimacy of the magistrate's initial determination that a summons should issue.

### c. Sufficiency Of The Evidence

Appellant finally claims that the trial court erred in denying his demurrer to the Commonwealth's evidence. This is essentially a challenge to the sufficiency of the evidence.[6]

■ In testing the legal sufficiency of evidence to support a verdict, a reviewing court is not permitted to substitute its judgment for that of the fact finder, but is restricted to assessing the evidence in the light most favorable to the verdict winner and drawing all proper inferences that the evidence suggests in that party's favor. *Commonwealth v. Smith,* 490 Pa. 374, 416 A.2d 517 (1980); *Commonwealth v. Jones,* 291 Pa.Super. 69, 435 A.2d 223 (1981). While a criminal conviction may not be based upon mere surmise or conjecture, the Commonwealth's burden in proving a criminal offense or the elements thereof may be sustained by means of wholly circumstantial evidence. *Commonwealth v. Berrios,* 495 Pa. 444, 434 A.2d 1173 (1981); *Commonwealth v. Harrison,* 289 Pa.Super. 126, 432 A.2d 1083 (1981). Moreover, it is within the province of the trier of fact, in a criminal prosecution, to pass upon the

5. Nor, logically speaking, could appellant question the magistrate's determination at the preliminary hearing, given the subsequent verdict, and our disposition of appellant's sufficiency claims, discussed herein.

6. The Commonwealth argues waiver here. However, appellant did file written post-trial motions, albeit in boiler-plate form, challenging the sufficiency of the evidence. Although such a cursory presentation would be inadequate today in light of *Commonwealth v. Holmes,* 315 Pa.Super. 256, 461 A.2d 1268 (1983), we nonetheless find that appellant adequately preserved this contention in this case.

credibility of witnesses and the weight to be accorded the evidence produced. So, too, the finder of fact is free to believe all, part or none of the evidence. *Commonwealth v. Stockard*, 489 Pa. 209, 413 A.2d 1088 (1980); *Commonwealth v. Tate*, 485 Pa. 180, 401 A.2d 353 (1979); *Commonwealth v. Lawton*, 272 Pa.Super. 40, 414 A.2d 658 (1979).

■ This standard is equally applicable where some of the evidence is circumstantial rather than direct, as long as the combination of evidence links the accused to each element of the crime beyond a reasonable doubt. *Commonwealth v. Meredith*, 490 Pa. 303, 416 A.2d 481 (1980); *Commonwealth v. Soltis*, 311 Pa.Super. 195, 457 A.2d 562 (1983).

Appellant's challenge to the evidence is three-fold. He claims that there is no evidence that the officers to whom the films were sold were over the age of seventeen, that his knowledge of the obscene character of the films has not been established, and that the Commonwealth failed to produce expert testimony concerning statewide community standards.

■ Appellant maintains that the Commonwealth failed to establish that the films were sold to persons over the age of seventeen. We cannot agree. During cross-examination, Officer Martin stated that he had been a state trooper for eleven years, and that at the time of trial he was thirty-three years old. Moreover, *both* officers testified at trial; the jury could reasonably have inferred from his appearance, demeanor, and position that Officer Rozum was also over seventeen years old. *See Commonwealth v. Nelson*, 320 Pa.Super. 488, 467 A.2d 638 (1983).

■ Appellant also challenges the adequacy of proof concerning his knowledge of the obscene nature of the films sold. This claim is equally without merit. We are guided here by the decision in *Commonwealth v. Doe*, 316 Pa.Super. 1, 462 A.2d 762 (1983). As in this case, the defendant in *Doe* did not examine the specific articles purchased, but merely processed the sale without viewing their contents. Nevertheless, the evidence was found sufficient to prove

beyond a reasonable doubt that the defendant had reason to know, or inquire into the obscene nature of the material in question. In *Doe*, the defendant was the sole employee working within the store at the time of the sale, and had been employed there for a number of months. In addition, various sexual items were displayed in plain view throughout the store. Furthermore, although certain magazines were wrapped in clear cellophane so that their contents could not be viewed, the covers clearly displayed performances of sexual acts.

Here, appellant was acting in a supervisory capacity during the sales transactions. Moreover, the doors of the viewing booths clearly provided notice of the nature of the films available for sale. Additionally, appellant was party to a conversation in which the contents of at least one of the purchased films was explicitly described. Finally, appellant's ability to answer specific questions concerning the availability of additional items within the store reflects his knowledge of the store's merchandise. Thus, although each of the films tendered was wrapped in cellophane, the jury could nonetheless have reasonably inferred that appellant was aware of the character of the films sold to Officers Rozum and Martin.

■ Appellant's final insufficiency claim focuses on the Commonwealth's failure to produce expert testimony of statewide community standards. An identical contention was raised in *Long v. 130 Market St. Gift & Novelty, etc.,* *supra.* As this court noted in *Long,* appellant's position reflects a prior holding of the Pennsylvania Supreme Court. *See Commonwealth v. LaLonde,* 447 Pa. 364, 288 A.2d 782 (1972). Observing that Mr. Justice Eagen's opinion in *Commonwealth v. Rodgers,* 459 Pa. 129, 327 A.2d 118 (1974), expressly overruled the *LaLonde* view, this Court concluded, per Judge Cercone, that motion picture films themselves

> are enough evidence for a jury, in applying our statewide standard, to determine whether the average person would find the materials appealing to prurient interests.

*Long v. 130 Market Street Gift, supra,* 294 Pa.Super. at 393, 440 A.2d at 522.

Thus, appellant's insufficiency argument fails here as well.

## II. MOTION FOR A NEW TRIAL

### a. *Jury Selection*

Turning to appellant's arguments in support of his motion for a new trial, he first challenges the jury selection process, characterizing as error the trial court's failure to individually and privately question the veniremen or permit defense counsel to personally question them.

Voir dire examination is designed to secure a competent, fair, impartial and unprejudiced jury. In pursuit of this objective, the right of a litigant to inquire into bias or any other subject which bears on the impartiality of a prospective juror has been generally recognized. Nevertheless, the scope and form of voir dire examination rests in the sound discretion of the trial judge, whose decisions will not be reversed absent a palpable abuse of discretion. *Commonwealth v. Bachert,* 499 Pa. 398, 453 A.2d 931 (1982), *cert. denied,* 460 U.S. 1043, 103 S.Ct. 1440, 75 L.Ed.2d 797 (1983); *Commonwealth v. Bossick,* 305 Pa.Super. 196, 451 A.2d 489 (1982). *See also Commonwealth v. Herron,* 243 Pa.Super. 319, 365 A.2d 871 (1976), and Pa.R.Crim.P. 1106(d).

Prior to voir dire, Judge Kiester notified counsel of the particularized questions he had drafted. Defense counsel voiced no objections to the proposed questions, nor did he offer additional questions. Rather, counsel merely requested permission to personally question the prospective jurors. This request was denied.

Although the record does not disclose the total number of persons summoned, the entire panel of veniremen was present in the courtroom for selection of the jury. After twenty-six persons were called as prospective jurors for the case, Judge Kiester propounded general questions to all of the assembled members of the venire regarding their knowledge of the charges against appellant, and their abili-

ty to sit as fair and impartial jurors. The following more specific questions were also asked:

Has any member of the panel been involved in any way in the controversy over the Adult Book Store in Penn Township?

Have you visited or patronized the store?

Has any member of the panel picketed or protested the establishment of the store?

Have you publicly or privately stated a position for or against the operation of this adult book store?

Have you formed an opinion as to the guilt or innocence of the defendant from any publicity the case has received or for any other reason?

During this questioning, eleven of the twenty-six prospective jurors and seven members of the general array were excused for cause.

Upon conclusion of the court's questioning, defense counsel renewed his request to personally conduct voir dire, which was again denied. Contending that the expressions of bias and prejudice by the seventeen individuals excused for cause[7] must have influenced the remaining veniremen, counsel then moved for a mistrial. It is the denial of this motion that we now consider.

Appellant argues that the existence of seventeen veniremen who indicated their lack of impartiality constituted prejudice as a matter of law and impaired the impartiality of the jurors who finally heard the case. To alleviate or discover the full extent of this prejudice, the trial court was required, appellant maintains, to specifically ask the remaining jurors whether the numerous assertions of bias would affect their ability to fairly decide the case. Thus, he argues, the voir dire conducted by the trial judge was inadequate. He claims that jurors will, arguably, respond more candidly if questioned individually and privately, and that Judge Kiester should, therefore, have shifted to an

7. The son-in-law of one juror was "involved in law enforcement," and thus that juror was excused upon stating that he would therefore be biased in favor of the Commonwealth.

individualized voir dire, in light of the responses initially elicited. Alternatively, appellant contends that the trial court erred in denying defense counsel an opportunity to extensively question the jury himself. We disagree.

The purpose of voir dire is to draw out any bias or prejudice, and thereby facilitate the removal of jurors with predisposed opinions. Here this objective was accomplished. Following brief statements of disapproval of the proliferation of "adult" establishments, or admissions that petitions to the same effect had been signed, seventeen persons were excused. Yet appellant now complains about these disapproving comments, arguing that consequently the remaining jurors were "tainted." However, appellant provided no evidence supportive of his contention that references to the petitions influenced the remaining veniremen. Although at one point defense counsel alluded to the circulation of petitions within Butler County, no petition was ever presented to the trial judge. Moreover, it was not shown that those jurors who had not signed the petitions were aware of their content, or that the petitions in any manner referred to appellant. Furthermore, the excused jurors' references to the petitions were not inflammatory. Each juror merely voiced his distaste or attested to the signing of a petition; there were no lengthy denunciations of this type of commercial activity, nor were opinions as to appellant's guilt stated. Finally, we note that assessment of the demeanor of potential jurors is within the province of the trial judge. *Commonwealth v. Bachert, supra.* Judge Kiester conducted the examination of the jurors, and to his satisfaction, all who were selected pledged their ability to fairly and impartially consider the case. While eighteen jurors were dismissed for cause, this by no means suggests a community so consumed with sentiment against appellant as to "impeach the indifference of jurors who displayed no animus of their own." *Murphy v. Florida,* 421 U.S. 794, 803, 95 S.Ct. 2031, 2037, 44 L.Ed.2d 589, 596 (1975), quoted in *Commonwealth v. Bachert, supra,* 499 Pa. at 411, 453 A.2d at 938. Thus, we find no evidence in the record that

any of the seated jurors harbored a reservation that would prevent discharge of their duty in accordance with their oath. Accordingly, we find no palpable abuse of discretion here.

Emphasizing the number of jurors openly disdainful of adult book stores, appellant would have us presume prejudice. Since this determination is one of law and not dependent on the trial judge's observation of the demeanor of the potential jurors, it is subject to ordinary review, rather than the strict standard of palpable error. *Commonwealth v. Rough*, 275 Pa.Super. 50, 418 A.2d 605 (1980). We find, however, that no error was committed in refusing defense counsel's requests.

The law recognizes the impossibility of requiring that jurors be free from *all* prejudices, and demands only that a prospective juror accept his sworn responsibility and attempt to reach a decision solely on the facts presented at trial. *Commonwealth v. Rough, supra.* Thus, it would be jurisprudentially unsound to endorse a rule of law proscribing every circumstance which provides an opportunity for the exercise of an untoward influence, without the necessity of establishing that there was in fact prejudice resulting from the event. *Commonwealth v. Richardson*, 476 Pa. 571, 383 A.2d 510 (1978). In exceptional circumstances, however, the "potentiality" of prejudice has resulted in the award of a new trial.

Where prospective jurors were exposed for long periods of time to individuals whose interest in the outcome of the case was unquestionably antagonistic to the position of the accused, reversal has been warranted. *Turner v. Louisiana*, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965); *Commonwealth v. Stewart*, 449 Pa. 50, 295 A.2d 303 (1972), *cert. denied*, 417 U.S. 949, 94 S.Ct. 3078, 41 L.Ed.2d 670 (1974). In *Turner, supra*, two deputy sheriffs who provided key testimony leading to the defendant's conviction had charge of the jury during the three-day trial and fraternized with them outside the courtroom during the performance of their duties. Although there was no proof that the deputies

spoke to the jurors about the case itself, the Court concluded that it "would be blinking reality not to recognize the extreme prejudice inherent in this continual association throughout the trial between the jurors and these two key witnesses for the prosecution." *Turner*, 379 U.S. at 473, 85 S.Ct. at 550, 13 L.Ed. at 429. In *Stewart, supra,* the accused was charged with first degree murder. Prior to trial, defense counsel was informed by a juror that the victim's father had been a member of the panel from which the trial jury was selected, and that the father had been in the same room with the trial jury for as long as two and one-half days. Although when asked during voir dire whether they knew anyone connected with the case each juror responded negatively, "the possibility still remain[ed] that some incident occurred during their association ... with the victim's father, which was so inherently prejudicial that it rendered impartiality impossible." *Id.,* 449 Pa. at 57–58, 295 A.2d at 307.

Prejudice has also been presumed in cases where the jury has been made aware of an accused's prior criminal record. For example, in *Commonwealth v. Pierce,* 451 Pa. 190, 303 A.2d 209, *cert. denied,* 414 U.S. 878, 94 S.Ct. 164, 38 L.Ed.2d 124 (1973), the defendant was tried in connection with the killing of a seminarian and a local attorney. The incident received extended media coverage, which included reports by the authorities that the accused was the confessed triggerman, and had a record of violent crimes. Nonetheless, a request for a change of venue was denied.[8] On appeal, our Supreme Court reversed, holding that the nature of the accounts released by the police were so "inherently prejudicial" that the defendant need not have shown a nexus between the publicity and actual jury prejudice, and hence he did not have the burden of showing identifiable

**8.** We view the circumstances leading to a change of venue request, and those resulting in a motion for a mistrial on the basis of the jury's receipt of prejudicial pre-trial information, as analogous. We note, incidentally, that a change of venue was not requested in the present case.

prejudice. Mr. Justice Eagen was also concerned with the source of the prior record information.

> Statements such as those of the police and the prosecutor in this case create an even more substantial risk of a denial of a fair trial, because of the position in the community these individuals hold, and also suggest an official disregard of safeguards inherent in a fair trial.

*Id.*, 451 Pa. at 198, 303 A.2d at 214.

Similarly, in *Commonwealth v. Bobko*, 453 Pa. 475, 309 A.2d 576 (1973), a trial booklet which indicated that the defendant was under indictment for charges unrelated to the present proceeding was distributed to the jury. Possession of that material might well have predisposed the jury to believe the defendant guilty, the Court observed, thereby denying him the presumption of innocence. Thus, a new trial was granted.

Cases discussing "inherent prejudice" are concerned, then, with prejudicial information as applied in particular circumstances, not with prejudice in the abstract. *See Commonwealth v. Romeri*, 504 Pa. 124, 470 A.2d 498 (1983). The circumstances here do not support a finding of prejudice. Here fellow jurors whose only connection with the case resulted from their call to jury duty responded to a few questions asked by the trial judge. Each was immediately removed sua sponte. Thus, this case does not involve any relationships between the veniremen and the case due to familial, financial, or situational ties with the parties, counsel, or witnesses. Furthermore, no reference was made to any other allegedly criminal activity on appellant's part. In fact, as noted above, nothing in the record suggests that appellant himself was in any way referred to by those jurors excused. *Cf. Commonwealth v. Bachert, supra* (Where no juror who was impaneled had read the article in question, it could hardly be said that such publicity denied appellant the opportunity for a fair trial) and *Commonwealth v. Dolhancryk*, 273 Pa.Super. 217, 417 A.2d 246 (1979) (Where news reports related to co-defendant's trial, and thus court could not conclude that the

reports conveyed information prejudicial to defendant, no abuse of discretion was found.)

On these facts, we do not find or presume prejudice. Accordingly, we affirm the trial judge's decisions regarding the appropriate scope and form of voir dire in the instant case.

### b. Jury Instructions

■■■ Appellant's next challenge is directed to the jury instructions. Contending that the trial judge did not properly define the term "average person" as used in the obscenity statute, appellant asserts error. In reliance on *Smith v. United States*, 431 U.S. 291, 97 S.Ct. 1756, 52 L.Ed.2d 324 (1977), appellant notes that the reactions of a sensitive or callous minority are not to be considered in determining whether a given work is obscene, and thus, Judge Kiester should have specifically explained this aspect of the standard to the jury.

This objection was not timely raised, however, and thus has not been preserved for appellate review. Rule 1119(b), Pa.R.Crim.P., states

No portions of the charge nor omissions therefrom may be assigned as error, unless *specific* objections are made thereto before the jury retires to deliberate...
(Emphasis added.)

As noted in *Commonwealth v. Rineer*, 310 Pa.Super. 241, 456 A.2d 591 (1983), compliance with Rule 1119(b) advances the purpose underlying the Rule—ensuring that the trial court is given an opportunity to avoid error. Review of the record in the instant case demonstrates that defense counsel did not specifically object to the omission. Although objections were raised concerning the trial court's definitions of "prurient interest" and "sexual conduct," the evidence of a sale by the defendant, and the Commonwealth's reference to the media as setting the applicable standard, the objection now before us was not specifically articulated. Appellant's "general exception to the charge" did not suff-

ice to apprise the trial judge of the claimed error as required by Rule 1119(b), and thus is not now reviewable.

## III. SENTENCE

 Lastly, appellant contests the propriety of the sentence. Specifically, he questions the imposition of the $10,-000.00 fine as a condition of probation in the instant case.

The Sentencing Code provides:

The court shall not sentence a defendant to pay a fine unless it appears of record that:

 (1) the defendant is or will be able to pay the fine; ...

In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

42 Pa.Cons.Stat. § 9726(c) and (d).

The transcript of the sentencing hearing indicates that appellant, a high-school graduate, was then earning $190.00 a week (net) as a clerk at the Adult Book Store, and was regularly paying support for two children. Yet, with these few facts before him, and without inquiring into appellant's ability to pay a substantial penalty, a $10,000.00 fine was imposed. As the transcript reveals, the sentencing judge assumed the existence of an agreement or understanding between appellant and his employer, to the effect that the employer would pay any penalty imposed upon conviction. Explicitly postponing a determination of appellant's ability to comply with this probationary term, the trial court continued:

Should you fail to pay the penalty and costs within a reasonable period of time, a violation hearing of course will be conducted which will make inquiry into the entire matter of ability to pay and responsibility to pay.

(Sent.Transc., April 19, 1982, p. 19.) *See Commonwealth v. Watson*, (J. 07029/84, filed April 13, 1984).

Accordingly, pursuant to 42 Pa.Cons.Stat. § 9726(c) and (d), we vacate the sentence and remand for resentencing in accordance with this opinion.

Judgment of sentence vacated. Case is remanded for resentencing.

Jurisdiction is relinquished.