499 A.2d 308

**COMMONWEALTH of Pennsylvania**

**v.**

**Gary Thomas STOCK, Appellant.**

Superior Court of Pennsylvania.

Argued April 11, 1985.

Filed Aug. 16, 1985.

Reargument Denied Oct. 16, 1985.

Carl M. Janavitz, Pittsburgh, for appellant.

Robert L. Eberhardt, Deputy District Attorney, Pittsburgh, for Commonwealth, appellee.

Before WIEAND, CIRILLO and JOHNSON, JJ.

CIRILLO, Judge:

An Allegheny County jury found Gary Stock guilty of selling two obscene magazines in violation of 18 Pa.C.S. § 5903(a)(2), and the court sentenced Stock to 11½ to 23 months in prison, suspending the prison sentence on the condition that Stock pay $10,000 for the use of the county. Stock appeals, asserting that the court abused its discretion by imposing a manifestly excessive sentence, and that the obscenity statute is unconstitutional. For the following reasons, we affirm.

We first address Stock's constitutional challenges to the obscenity law.

The portion of the statute Stock was charged with violating states:

(a) **Offenses defined.**—No person, knowing the obscene character of the materials involved, shall:

.  .  .  .  .

(2) sell, lend, distribute, exhibit, give away or show any obscene materials to any person 17 years of age or older or offer to sell, lend, distribute, exhibit or give away or show, or have in his possession with intent to sell, lend, distribute, exhibit or give away or show any obscene materials to any person 17 years of age or older, or knowingly advertise any obscene materials in any manner . . . .

Stock first argues that the statute is unconstitutionally overbroad because its proscription on "show[ing]" obscene materials invades spheres of privacy protected by the First,

Ninth, and Fourteenth Amendments to the United States Constitution and Article 1, § 7 of the Pennsylvania Constitution.

Stock relies on *Stanley v. Georgia*, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969), wherein the United States Supreme Court held that a state cannot make mere private possession of obscene matter a crime, because such a regulation would intrude on rights of privacy protected by the First and Fourteenth Amendments. Stock contends that the Pennsylvania statute as drawn would prohibit a husband from "showing" obscene materials to his wife in the privacy of their home, thus violating the constitutional limitations set down in *Stanley*.

Stock was not prosecuted for privately "showing" obscene materials to his wife, but for publicly selling them from an adult bookstore. He does not assert that the provisions of the statute are unconstitutional as applied to commercial sales of obscene material. Thus, preliminarily we need to address whether Stock has standing to raise this issue.

A traditional principle of constitutional adjudication is that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may be applied unconstitutionally to others in situations not before the court. *Broadrick v. Oklahoma*, 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). However, where First Amendment rights are involved, a litigant may attack the facial overbreadth of a statute in regulating free expression even where his own rights are not directly affected by the asserted overbreadth, based on the judicial assumption that the statute's very existence might have a "chilling effect" on the exercise of First Amendment freedoms by persons not before the court. *See id.* Thus, we will entertain Stock's contention that the Pennsylvania obscenity statute is unconstitutionally overbroad on its face. *See also Commonwealth v. DeFrancesco*, 481 Pa. 595, 393 A.2d 321 (1978); *American Booksellers Association v. Rendell*, 332 Pa.Super. 537, 481 A.2d 919 (1984).

■ In addressing Stock's overbreadth challenge, we bear in mind that the judiciary must accord a strong presumption of constitutionality to the acts of the legislature as a coequal branch of government. *Commonwealth v. Hassine,* 340 Pa.Super. 318, 490 A.2d 438 (1985). To overcome this presumption, the person challenging the constitutionality of a statute shoulders the heavy burden of demonstrating that the statute clearly, palpably, and plainly violates the constitution. *Commonwealth v. Robinson,* 497 Pa. 49, 438 A.2d 964 (1981); *Commonwealth v. Heck,* 341 Pa.Super. 183, 491 A.2d 212 (1985) (petition for allocatur filed); *Commonwealth v. Grady,* 337 Pa.Super. 174, 486 A.2d 962 (1984).

■ We must also premise our discussion on the observation that obscenity is not a constitutionally protected mode of expression. *Miller v. California,* 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973). This principle is important here because of the rule of constitutional jurisprudence that a statute properly regulating unprotected conduct will not be voided as overly broad unless the overbreadth is substantial judged in relation to the statute's plainly legitimate sweep. *Broadrick, supra; American Booksellers, supra.*

■ Moreover, facial overbreadth will not be invoked as grounds for invalidating a statute when a limiting construction can be placed on the challenged statute. *Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *DeFrancesco, supra.*

This said, we concede at the outset that Section 5903(a)(2) would appear to be violative of the right to privacy recognized in *Stanley,* if the statute were construed as making criminal the mere private showing of obscene materials between spouses in the confines of their home. *Stanley* clearly established that there is a zone of protected privacy in the home upon which the government cannot infringe without trampling the constitutional rights of the individual; thus, in *Stanley* itself the state could not prosecute the

defendant merely for knowingly having an obscene film in his home. *But cf. United States v. 12 200-Ft. Reels of Super 8mm. Film,* 413 U.S. 123, 93 S.Ct. 2665, 37 L.Ed.2d 500 (1973) (protected right to possess obscene materials in privacy of one's own home does not give rise to correlative right to sell or give it to others); *United States v. Orito,* 413 U.S. 139, 93 S.Ct. 2674, 37 L.Ed.2d 513 (1973) (no zone of constitutionally protected privacy follows obscene materials when they are moved outside the privacy of the home).

However, reviewing the Pennsylvania statute in light of the principles we have enunciated, we are led to conclude that the word "show" as used in the statute should not be read so broadly as to take within its sweep mere private showings of obscene materials between consenting couples in their homes. Rather, we interpret the statute as prohibiting public "shows" of obscene materials, or the showing of such materials for commercial gain.

Our reading is supported by prior judicial constructions of the statute as well as rules of statutory construction originating from the Legislature itself.

In *Commonwealth v. Doe,* 316 Pa.Super. 1, 462 A.2d 762 (1983), this Court addressed an overbreadth challenge to 5903(a)(2) similar to that presented here. In *Doe,* the appellant argued that the statute unconstitutionally prohibited the mere private possession of obscene material in contravention of *Stanley.* Writing for the Court, the Honorable Justin Johnson held that the additional elements required by the Pennsylvania statute, namely that the defendant "sell, distribute, exhibit, etc." the obscene material, or offer to do so, or have it in possession with intent to do so, "clearly distinguish" our statute from the one condemned in *Stanley. See* 316 Pa.Super. at 11, 462 A.2d at 767–68.

The nature of this "clear distinction" was further elucidated in *Long v. 130 Market Street Gift & Novelty,* 294 Pa.Super. 383, 440 A.2d 517 (1982). In *Long* our distinguished then-President Judge Cercone, joined by his eminent colleagues Judges Wieand and Hoffman, conducted

a comprehensive examination of the purposes of the obscenity statute in the context of a challenge to the statute based on the federal and state constitutional guarantees of freedom of speech. The following passage from the Court's opinion in that case illuminates the issue we are deciding:

A study of the legislative history reveals that the Legislature had two purposes in mind when it enacted the anti-obscenity statute. In the legislature's view, the growth of commercial pornography has exercised a pernicious effect on the sensibilities of the majority of our populace. By enacting the statute it hoped to combat these ill effects. ... *Secondly, the criminal elements of society have recently gained considerable financial influence over the population of the Commonwealth. The statute does not forbid, indeed constitutionally it could not, the private possession of pornography, nor does it even prohibit the populace's access to obscene material since the latter may be safely displayed in [the public institutions exempted in § 5903(j)]. What the statute does prohibit is the commercial exploitation of obscene materials by denying the right to sell them.*

294 Pa.Super. at 403-04, 440 A.2d at 526–27 (emphasis ours). Thus, the evil sought to be controlled by the statute is not the mere possession or even the showing of obscene materials in private, but the commercial exploitation of such materials, or at the very least their exhibition in a public setting where the individual's right to privacy is not a significant factor.

That this is the true intendment of the Section 5903(a)(2) prohibition on "showing" is further bolstered by a fair application of the rules of statutory construction. Thus,

In ascertaining the intention of the General Assembly in the enactment of a statute the following presumptions, among others, may be used:

(1) That the General Assembly does not intend a result that is absurd, impossible of execution or unreasonable.

(2) That the General Assembly intends the entire statute to be effective and certain.

(3) *That the General Assembly does not intend to violate the Constitution of the United States or of this Commonwealth.*

1 Pa.C.S. § 1922(1)–(3) (emphasis added). Moreover, under legislative mandate penal provisions of the statutory law must be strictly construed. *Id.* § 1928(b)(1). Also, "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage," *id.* § 1903(a), but "General words shall be construed to take their meanings and be restricted by preceding particular words," *id.* § 1903(b).

We turn to several "common and approved" usages of the verb "to show": "1: to cause or permit to be seen: EXHIBIT ... 2: to set out for sale: OFFER ... 3: to present as a public spectacle: PERFORM 4: to display for the notice of others...." Webster's New Collegiate Dictionary 1066 (1981). Reading the word "show" in the statute as restricted by the words preceding it—"sell, lend, distribute, exhibit, give away"—and further noting that among the obscene materials restricted by the statute are motion pictures, of which no word describes the act of exhibiting them to the public better than "to show"—we think it clear that the Legislature did not intend to proscribe a husband from privately "showing" obscene materials to his wife, or prevent any other such act that would implicate the fundamental liberties that citizens enjoy in the sacred privacy of their homes.

Our conclusion that the statute makes no attempt to impinge on privacy rights receives further support in the Legislature's classification of obscenity offenses under Chapter 59 of the Crimes Code, entitled "Public Indecency." We may properly consider this classification as an aid to construction of the statute. *See* 1 Pa.C.S. § 1924. In examining the statutory scheme we discover that every other offense described in Chapter 59 involves indecent acts committed in public, *see* 18 Pa.C.S. § 5901 ("Open lewdness"), or for pecuniary gain, *see id.* §§ 5902 ("Prostitution and related offenses"), 5904 ("Public exhibition of insane or

deformed person"). *See also Commonwealth v. Potts,* 314 Pa.Super. 256, 460 A.2d 1127 (1983) (prostitution statute clearly restricted to performance of sexual acts for hire).

Thus, given the judicial presumption that 18 Pa.C.S. § 5903(a)(2) was intended to be constitutional, and the limiting construction that rationally can be placed on the wording of the statute, we hold that the statute does not violate the constitutional right to privacy, and is not substantially overbroad in relation to its plainly legitimate sweep of regulating the commercial sale or public purveyance of obscenity, activities which are not protected by the First Amendment, *see Miller, supra; Orito, supra.* Accordingly, Stock has failed to carry his burden of showing that the statute is unconstitutionally overbroad on its face.

Stock next argues that subsection (j) of the statute, which exempts certain public and educational institutions from the law, violates the equal protection clause of the Fourteenth Amendment because the exemption is without rational basis in a legitimate state interest. We are constrained to reject this claim, as this Court has already decided that the challenged classification does not violate equal protection of the laws. *American Booksellers, supra; Long, supra.*

Next Stock maintains that the obscenity statute violates the First and Fourteenth Amendments because the element of scienter defined in the statute is so "vague" and "minimal" as to have a chilling effect on the rights of Pennsylvania citizens to sell, exhibit, or display constitutionally protected material. The challenged provision reads as follows: " 'Knowing.' As used in subsection (a), knowing means having general knowledge of, or reason to know or a belief or ground for belief which warrants further inspection or inquiry of, the character and content of any material described therein which is reasonably susceptible of examination by the defendant." 18 Pa.C.S. § 5903(b). In *Doe, supra,* we rebuffed the same type of attack that appellant is making on the scienter element of the obscenity law.

*Doe* held that the law's definition of "knowing" is not unconstitutionally vague, and that the law passes constitutional muster by requiring some awareness on the part of the defendant of the obscene character of the materials involved. In connection with these holdings in *Doe* Judge Johnson cited precisely the same United States Supreme Court decisions that Stock is now advancing in support of his argument. We believe that the issue thus raised has already been decided in *Doe,* and under principles of stare decisis we decline to discuss it any further.

Stock next argues that the obscenity statute unlawfully delegates legislative power to the several district attorneys of the Commonwealth by conferring on them the discretion whether to proceed against alleged violators by criminal prosecution or equitable injunction. *See* 18 Pa.C.S. § 5903(g), (h). Stock contends that this prosecutorial option offends Article 2, § 1 of the Pennsylvania Constitution as well as the Fourteenth Amendment by confiding a standardless legislative discretion in district attorneys. We disagree. The statute defining the offense creates a clear, explicit standard in accordance with the definition of obscenity announced by the United States Supreme Court in *Miller.* The statute gives the district attorney no say in deciding what is or is not obscene; the only discretion provided is in the means of enforcement chosen to combat the evils identified in the legislation. This alleged "delegation" of discretion is in reality not a delegation at all, but merely a particular manifestation of the inherent discretionary powers of district attorneys in our system of justice. A district attorney by the nature of his office is invested with broad discretion over how, whether, and when to prosecute criminal offenses. *See Commonwealth v. Malloy,* 304 Pa. Super. 297, 450 A.2d 689 (1982) (Opinion by Cirillo, J.). This discretion is not lessened when the prosecutor is charged with deciding which of two legislatively authorized techniques of enforcement will more effectively accomplish the legislative program of stamping out commercial obscenity.

Appellant's constitutional attack on the statute on delegation grounds must fail.

Stock next argues that the statute is repugnant to Article 1, § 7 of the Pennsylvania Constitution because it allows for a conviction for the publication of obscene materials without a showing of malice. This argument blatantly ignores the settled pronouncements of this Court which have already decided this question. We have repeatedly held that the Pennsylvania Constitution affords no greater protection for the distribution and sale of obscene materials than do the First and Fourteenth Amendments to the United States Constitution. *Commonwealth v. Hulehan,* 338 Pa.Super. 309, 487 A.2d 980 (1985); *Commonwealth v. Croll,* 331 Pa.Super. 107, 480 A.2d 266 (1984); *accord, Long, supra; Doe, supra; American Booksellers, supra.*

Stock's final constitutional claim is actually a dual attack on subsection (f) of Section 5903. This provision makes it illegal for any person to require as a condition of business dealings that any distributor or retailer purchase or take for resale any written or printed matter or article or instrument "of an obscene nature."

The first prong of Stock's attack on 5903(f) is based on the asserted vagueness of the phrase "obscene nature." Stock points out that the Legislature has explicitly defined "obscene materials," the term used in subsection (a)(2) of the statute, yet has not defined materials of an "obscene nature" as that term appears in subsection (f). Because of the disparity in wording, Stock apprehends that the Legislature sought to include a wider class of materials in (f) than in (a)(2), but since there are no standards for determining what falls within the supposed wider class, he argues that subsection (f) is fatally vague so as to exert an unconstitutional chilling effect on First Amendment rights.

We reject Stock's reading of the statute, and determine that both subsections refer to the same class of materials. Although the difference in wording perhaps reflects imprecise drafting, we can readily ascertain the reason therefor. The obscenity statute as first passed by

the Legislature in 1972 contained a blanket definition of "obscene" which applied to all subsections of Section 5903. *See* Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1. However, our Supreme Court in *Commonwealth v. McDonald,* 464 Pa. 435, 347 A.2d 290, *cert. denied,* 429 U.S. 816, 97 S.Ct. 57, 50 L.Ed.2d 75 (1975), determined that the definition of obscenity in the 1972 act did not meet the standards of *Miller, supra,* and hence struck down the statute. Thereafter the Legislature rewrote the statute and substituted the present definition of "obscene materials" incorporating the language of *Miller.* Act of Nov. 5, 1977, P.L. 221, No. 68, § 1; *see* 18 Pa.C.S. § 5903(b) ("Definitions"). However, through apparent oversight the Legislature failed to amend the wording of subsection (f) of the statute to take into account that the Act now defined the noun "obscene materials" rather than the adjective "obscene." Nevertheless, we need not blind ourselves to the fact that the Legislature in amending the statute was clearly trying to come within the letter of the law as laid down in *Miller.* Thus, any interpretation of what the Legislature means by materials "of an obscene nature" must refer to the *Miller* standards quoted substantially verbatim in the statutory definition of "obscene materials." This result is compelled not only by the rules of statutory construction, but by ordinary precepts of common sense. We therefore decline to throw out the obscenity statute on the flimsy semantic grounds offered here.

Appellant also contends that subsection (f) represents an unconstitutional interference with the right to contract. *See* U.S. Const. art. I, § 10. We reject this argument out of hand. We are unable to conceive how Stock has any standing to challenge the statute on the basis of the contract clause, when he neither alleges the existence of a contract which the statute impairs, nor asserts any interest in the type of business dealings which subsection (f) regulates. "[W]here the legal or equitable rights of a party are not in any way touched, and he is in no way injured, he cannot be heard to complain of the impairment of the obligation of his contract, as a mere abstract proposition."

*Hooker v. Burr*, 194 U.S. 415, 422, 24 S.Ct. 706, 709, 48 L.Ed. 1046 (1904).

Thus, we dismiss appellant's constitutional attacks on the Pennsylvania obscenity statute as meritless.

Finally, appellant contends that the trial judge imposed a manifestly excessive and improper sentence on the unfounded assumption that appellant's employer (the owner of the adult book store) would pay the $10,000 penalty assessed on appellant. This complaint stems from the following remarks of the trial judge at the sentencing proceeding:

> I don't intend to put this man in jail. He's not an owner, he's an employee. He certainly isn't the kind of person who at this point would require me to believe that he should go to jail. However, I would, and I think you all know this, and at least you all suspect it, I do intend to make it as financially inconvenient for him as I possibly can, suspecting all the while that his employer will bear the costs of the financial inconvenience. And that is where the burden should lie. He's still employed, and therefore, I have every reason to believe that as in numbers cases, the book, so to speak, bears the costs.

In *Commonwealth v. Croll, supra,* this Court was faced with a similar situation in which the trial court fined the defendant $10,000 on the assumption that the defendant's employer would pay the fine. We vacated the sentence and remanded for resentencing, holding that the sentence was not imposed in accordance with the Sentencing Code, which states:

> The court shall not sentence a defendant to pay a fine unless it appears of record that:
>
> (1) the defendant is or will be able to pay the fine; ...
> In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the defendant and the nature of the burden that its payment will impose.

42 Pa.C.S. § 9726(c), (d).

Thus, if indeed the trial judge sentenced Stock based on the unsupported supposition that his employer would subsi-

dize payment of the fine, and at the same time failed to inquire into Stock's ability to pay given his resources and the burden the fine would impose, then we would have to vacate the sentence as improperly entered. *See Commonwealth v. Gaskin,* 325 Pa.Super. 349, 472 A.2d 1154 (1984) (sentence must be vacated if based in whole or in part on impermissible factor).

However, this case is distinguishable from *Croll.* When Stock's counsel objected to the sentencing judge's purported consideration of a dehors-the-record understanding that Stock's employer would pay the fine, the judge treated the objection as a de facto petition for reconsideration of sentence; thereafter the judge explicitly inquired into Stock's ability to pay the fine. Specifically, the court received evidence that Stock earned approximately $1,400 a month working at the adult book store; that his monthly rent payment was $195; that he supported a wife and three children, all of whom suffered from chronic ear problems, and that the family had no health insurance to pay the extraordinary medical bills; and that Stock had no operable automobile. The court then determined, based on approximated calculations of Stock's yearly gross salary, income tax liability, and expenses, that "he should have sufficient funds to pay something less than $500 a month [*i.e.,* $10,000 spread over the 23 months of the suspended sentence] to the citizens of Allegheny County for his participation in this obscenity."

The fine imposed was admittedly onerous; however, sentencing is a matter within the sound discretion of the trial court, whose decision will not be reversed absent manifest abuse. *Commonwealth v. Mead,* 300 Pa.Super. 510, 446 A.2d 971 (1982). We find no such abuse of discretion, notwithstanding that payment of the fine probably will require Stock to make substantial sacrifices. *See Commonwealth v. Wood,* 300 Pa.Super. 463, 446 A.2d 948 (1982) (Opinion by Wieand, J.) (similar holding with regard to duty to pay restitution).

We note parenthetically that the suspended prison sentence imposed on Stock is of no force and effect. The Supreme Court recently reiterated that a defendant cannot be committed to prison to serve a previously suspended sentence, as suspension of sentence is an "exhaustion" of the sentencing power. *Commonwealth v. Goldhammer,* 507 Pa. 236, 248 n. 5, 489 A.2d 1307, 1313 n. 5 (1985); *see also Commonwealth v. Ferrier,* 326 Pa.Super. 331, 473 A.2d 1375 (1984) (Opinion by Wieand, J.) (indefinitely suspended sentence is not a sanctioned sentencing alternative); *accord, Commonwealth v. Hamilton,* 339 Pa.Super. 1, 488 A.2d 277 (1985).

AFFIRMED.

WIEAND, J., files a concurring and dissenting statement.

WIEAND, Judge, concurring and dissenting:

I join the excellent opinion authored by Judge Cirillo as it pertains to the constitutionality of 18 Pa.C.S. § 5903(a)(2). In my opinion, however, the fine imposed upon appellant was manifestly in excess of his ability to pay and was premised upon the belief that it would be paid by his employer, the owner of the adult book store. Such a sentence is improper. *Commonwealth v. Croll,* 331 Pa.Super. 107, 480 A.2d 266 (1984). Therefore, I would remand for resentencing.