487 A.2d 980

**COMMONWEALTH of Pennsylvania**

v.

**Wayne HULEHAN, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 11, 1984.

Filed Jan. 25, 1985.

310

312

Robert E. Levy, Asbury Park, N.J., for appellant.

Seth Weber, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before ROWLEY, McEWEN and HOFFMAN, JJ.

## OPINION OF THE COURT

ROWLEY, Judge:

This is a direct appeal from the judgment of sentence imposed following appellant's conviction for the sale of obscene materials, 18 Pa.Cons.Stat. § 5903(a)(2). On appeal, appellant presents numerous claims of error. However, after careful review of the record in this case, and consideration of the arguments presented, we affirm.

On February 10, 1981, Detectives William S. Brosha and David P. Stiles, investigators associated with the Bucks County District Attorney's Office, proceeded to the Bristol News World, located at 576 Route 13 in Bristol Township, Bucks County. Upon their arrival, they observed a single-

story commercial building with a number of large windows, through which the interior of the establishment could be seen. The officers entered the building, and observed that the store was divided into several sections. Newspapers, magazines, and other items of general circulation were located in the front area of the store, as was the cashier's counter. In the rear of the store were display racks and shelves on which had been placed numerous periodicals of a sexual nature. Projection booths had also been placed in this area. Dividing the front and rear sections of the store was a swinging gate. Positioned on the gate was a sign stating that only persons twenty-one years of age or older were permitted beyond that point, and referring to the presence of "adult" materials therein.

After browsing through the store for approximately 10 minutes, Detective Brosha selected a magazine entitled "Staghorn, Volume no. 1," which depicted sexual acts between males. Taking the magazine to the cash register counter, Detective Brosha purchased it from appellant, and the officers left.

The next day the officers returned to the Bristol News World, and executed the warrant they had obtained for appellant's arrest. Following a non-jury trial before the Honorable William Hart Rufe, III, on June 1, 1982, appellant was convicted of selling obscene materials. Timely post-trial motions for a new trial and in arrest of judgment were denied. This appeal follows.

### I. *Constitutionality of the Obscenity Statute*

Initially, appellant contends that the Pennsylvania obscenity statute is impermissibly vague, in violation of the Fifth Amendment to the United States Constitution. Appellant acknowledges that the Pennsylvania provision mirrors the prevailing standard for obscenity as established by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419, reh. denied, 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973), yet urges us to find that this standard is, nonetheless, violative of the federal constitution. This we may not do; the United States Su-

preme Court is the ultimate arbiter of the federal constitution. *Marbury v. Madison,* 5 U.S. 137, 1 Cranch 137, 2 L.Ed. 60 (1803).

■ Appellant also maintains that the obscenity provision contravenes Article 1, § 7 of the Pennsylvania Constitution. Article 1, § 7 provides, *inter alia,* that "[t]he free communication of thoughts and opinion is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." Emphasizing that "obscenity" is susceptible to varying interpretations, appellant concludes that, in light of this constitutional language, the "more rational" approach is to embrace obscenity within the "any subject" aspect of Article 1, § 7. Accordingly, the Commonwealth's sole duty would be to prosecute individuals whose conduct is "abus[ive] of that liberty," i.e., those who subject others, without their consent, to this mode of expression, and those who expose minors, who are incapable of giving consent, to obscene materials.

While we recognize that, in interpreting our state constitution, we may provide greater protection to fundamental rights than that mandated by the decisions of the United States Supreme Court, this Court has already decided the question here presented. In entertaining a similar invitation to "set a higher standard for the State of Pennsylvania in obscenity criminal matters," this Court recently declared,

> It is clear to us, and we therefore hold, that Art. I, § 7 of the Pennsylvania Constitution affords no greater protection for the distribution and sale of obscene materials than do the First and Fourteenth Amendments to the United States Constitution.

*Commonwealth v. Croll,* 331 Pa.Super. 107, 114, 480 A.2d 266, 269 (1984). *See also, American Booksellers Assoc., Inc., v. Rendell,* 332 Pa.Super. 537, 565, 481 A.2d 919, 933 (1984).

## II. *Amendment of the Information*

■ By criminal complaint dated February 11, 1981, Officer Brosha charged that appellant

did ... sell, offer to sell, or show obscene materials to [him, ... an] individual [ ] over the age of 17, knowning [sic] the obscene character of the materials involved, as defined in the Pennsylvania Crimes Code, 18 P.C.S.A. Section 5903(a)(2).

Following a preliminary hearing, an information, No. 1290/81, was filed. The information omitted, however, the phrase "knowing the obscene character of the materials." Pre-trial motions averring, *inter alia,* that the information should be quashed and the complaint dismissed because of this allegedly fatal omission, and the information's failure to specify the magazine sold by appellant, were filed. A hearing on these motions was then scheduled for July 22, 1981.[1]

In the interim, on June 25, 1981, the Commonwealth filed an amended information, at No. 1290–01/81, which added the phrase "knowing the obscene character of the materials involved." Following the scheduled hearing, the trial court, by order dated August 11, 1981, denied appellant's motion to quash the information and dismiss the complaint, without reference to the alleged defects in the information.[2] Subsequently, on September 10, 1981, the Commonwealth filed a second amended information, at No. 1290–02/81, which alleged that the appellant

did, knowing the obscene character of the material involved, sell obscene material, a magazine entitled "Staghorn" volume number 1, to a person more than 17 years of age ...

Due process requires that a criminal information be certain, free from ambiguity, and specific as to the crime alleged, to facilitate preparation of a defense and to avoid multiple prosecutions. Appellant finds within the amendments to the information here a denial of due process. Specifically, appellant claims that no crime was alleged in

1. Argument on appellant's pre-trial motions was consolidated with arguments heard in eight other obscenity cases.

2. The order denying the motion to quash refers only to appellant's contention that the Commonwealth failed to establish a prima facie case at the preliminary hearing.

the original information, given the Commonwealth's failure to aver the requisite mental state; an obscenity conviction may not be obtained solely on the basis of an individual's conduct. Furthermore, the original information's failure to identify the item sold precluded his effective preparation of a defense, appellant contends.

■ Designed to address these same due process concerns, by insuring that an accused is fully appraised of the charges against him, and by prohibiting the last-minute addition of criminal acts of which an accused may be unaware, Pennsylvania Rule of Criminal Procedure 229 states,

> The court may allow an information to be amended when there is a defect in form, the description of the offense, the description of any person or any property, or the date charged, provided the information as amended does not charge an additional or different offense . . .

See *Commonwealth v. Stanley*, 265 Pa.Super. 194, 401 A.2d 1166 (1979), aff'd, 498 Pa. 326, 446 A.2d 583 (1982). In *Stanley*, the considerations relevant to disposition of a Rule 229 claim were reviewed.

> [T]he courts of this Commonwealth employ the test of whether the crimes specified in the original indictment or information involve the same basic elements and evolved out of the same factual situation as the crimes specified in the amended indictment or information. If so, then the defendant is deemed to have been placed on notice regarding his alleged criminal conduct. If, however, the amended provision alleges a different set of events, or the elements or defenses to the amended crime are materially different from the elements or defenses to the crime originally charged, such that the defendant would be prejudiced by the change, then the amendment is not permitted.

*Id.*, 265 Pa.Superior Ct. at 212–213, 401 A.2d at 1175. (Footnotes omitted.) In reviewing the validity of criminal pleadings, then, we look more to substantial justice than to technicalities. *Commonwealth v. Rolinski*, 267 Pa.Super.

119, 406 A.2d 763 (1979). Thus, although the addition of the scienter element here may have been a substantive change, substantive changes have been permitted where the defendant has been thoroughly informed of the underlying events giving rise to the charges and is, thus, not prejudiced by the amendment. For example, in an analogous situation, the information charged the defendant with theft by unlawful taking or disposition of a tractor trailer and its cargo. *Commonwealth v. Casuccio,* 308 Pa.Super. 450, 454 A.2d 621 (1982). Although the original information did not aver that the defendant had taken the trailer "with the intent to deprive the owner thereof," the Commonwealth was permitted to amend the information, prior to trial, to include this phrase. In affirming the trial court's decision to permit the amendment, we noted that the addition of language describing the scienter element did not amount to charging the accused with an additional or different offense, particularly since he knew that he was charged with unlawfully removing the tractor-trailer. *Id.,* 308 Pa.Superior Ct. at 461, 454 A.2d at 626.

■ Similarly, the subsequent inclusion of the element of "knowledge" under the obscenity statute, and the name of the magazine in question, does not result in the allegation of a different or additional offense. By virtue of the complaint, the validity of which has gone unchallenged, delivered to appellant at the preliminary arraignment, *See* Pa.R.Crim.P. 140,[3] appellant was charged with an unlawful sale under the obscenity statute. In addition, Detective Brosha's affidavit in support of the complaint clearly identified the magazine purchased from appellant. Moreover, counsel for appellant participated in the March 23, 1981 preliminary hearing at which the magazine was presented, and according to the docket transcript, Detective Brosha was sworn and testified. Finally, we note that the second amendment to the information was filed approximately nine

3. Appellant does not deny receipt of a copy of the complaint at the preliminary arraignment.

months before appellant's trial began,[4] and that, during his cross-examination of Detective Brosha at trial, defense counsel noted that the charge then present before the court was basically the same as that set out in the criminal complaint. Accordingly, appellant cannot be said to have been prejudiced in any sense by the Commonwealth's actions in twice amending the information.[5]

### III. *Pre-Trial Review of Challenged Materials*

■ Appellant next argues that Judge Rufe should have independently examined "Staghorn, Volume no. 1" prior to trial, to determine whether the magazine contained representations of "ultimate sexual acts" or "lewd exhibition of the genitals." 18 Pa.Cons.Stat. § 5903(b). We find, however, no authority for the proposition that a trial judge must review assertedly obscene materials *prior to trial.* In any case, we fail to see how appellant has suffered any harm as a result of this alleged error, given that Judge Rufe, sitting as the trier of fact, did examine the magazine prior to entering the verdict.

### IV. *Sufficiency of the Evidence*

■ Appellant's challenge to the sufficiency of the evidence is three-fold. Initially, appellant focuses on the Commonwealth's failure to introduce extrinsic evidence to demonstrate that the magazine appealed to the prurient interest of the average person, lacked serious literary, artistic, political, educational or scientific value, and depicted sexual conduct in a patently offensive manner. Similarly, appellant contests the absence of testimonial evidence delineating contemporary community standards.

The Commonwealth's case consisted of the testimony of Detective Brosha and one exhibit—the magazine itself. Re-

---

4. The Commonwealth had been granted an extension of time under Rule 1100.

5. Appellant also questions the propriety of the "ex parte" amendments to the information. Appellant, was, however, given an opportunity to pursue his objections to the amendments with the trial court prior to trial.

lying on *Commonwealth v. LaLonde,* 447 Pa. 364, 288 A.2d 782 (1972) and similar decisions from other jurisdictions, appellant maintains that expert testimony is required in obscenity prosecutions. However, appellant's position reflects a prior holding of the Pennsylvania Supreme Court; Mr. Justice Eagen's opinion in *Commonwealth v. Rodgers,* 459 Pa. 129, 327 A.2d 118 (1974) expressly overruled *LaLonde.* Similarly, recent decisions of this Court have rejected the suggestion that expert testimony must be presented. In *Long v. 130 Market St. Gift & Novelty,* 294 Pa.Super. 383, 440 A.2d 517 (1982), we concluded that

> printed publications and photographs themselves are enough evidence for a jury, in applying our statewide standard, to determine whether the average person would find the materials appealing to prurient interests.

*Id.,* 294 Pa.Superior Ct. at 393, 440 A.2d at 522. *See also, Commonwealth v. Croll,* 331 Pa.Super. 107, 480 A.2d 266 (1984). (Commonwealth need not produce expert testimony of statewide community standards.) In light of *Rodgers, Long,* and *Croll,* then, we conclude that the Commonwealth need not establish a work's patent offensiveness or lack of serious value through expert testimony either.

■ Appellant's second affront to the Commonwealth's evidence centers on the nature of the magazine sold to Detective Brosha. Describing "Staghorn, Volume no. 1" as material that "concerns itself with deviant sexual groups and their practices," appellant reiterates Detective Brosha's statement at trial that the magazine "was selected from a group ... which depicted sexual acts between males." Classifying homosexuals as a deviant group, and alleging that the magazine in question was directed toward this group, appellant contends that expert testimony must be produced to establish the publication's prurient appeal to such a specialized group.[6] In support of this claim, appellant cites *Mishkin v. State of New York,* 383 U.S. 502, 86

6. Apparently appellant is arguing in the alternative here; previously he contested the failure to produce expert testimony regarding the magazine's appeal to the prurient interest of the *average person.*

S.Ct. 958, 16 L.Ed.2d 56 (1971). Therein, Mr. Justice Brennan stated that, where the material is designed for and primarily disseminated to a "clearly defined deviant sexual group," the prurient appeal component of the obscenity standard may be adjusted to consider the material's appeal to that group. *Mishkin*, at 508–509, 86 S.Ct. at 963–964, 16 L.Ed.2d at 61–62. In addition, appellant points out that in *Paris Adult Theatre I. v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), the Supreme Court expressly reserved judgment on the need for expert testimony to establish the appeal to prurient interests of "such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge." *Id.*, at 56, n. 6, 93 S.Ct. at 2634, n. 6, 37 L.Ed.2d 456, n. 6.

Appellant's argument fails here, however, in that the record does not conclusively demonstrate, as did the record in *Mishkin*, that the magazine was intended for and primarily disseminated to a "clearly defined sexual group." In *Mishkin*, the evidence fully established that each item was specifically conceived and marketed for a particular sexually deviant group.[7] The record in the instant case reveals, however, Detective Brosha's observation of magazine cover photographs depicting various acts of fellatio and cunnilingus, bondage, and beastiality, within the "adult" section of a store servicing the general public. Although "Staghorn, Volume no. 1" may have been comprised solely of photographs portraying sexual acts between men, we cannot thereby conclude that this magazine's appeal is limited to a "clearly defined sexual group" or that the erotic representations included therein were designed for and primarily distributed to any particular group.

7. In *Mishkin*, the defendant was prosecuted for his dominant role in several enterprises engaged in the production and sales of fifty books. The defendant had given detailed instructions to authors and artists to graphically depict sadomasochism, fetishism, and homosexuality. To be certain that his purpose was fulfilled, the defendant furnished authors with such source materials as Caprio, *Variations in Sexual Behavior* and Krafft-Ebing, *Psychopathia Sexualis.*

Furthermore, even were we to find that "Staghorn, Volume no. 1" appeals primarily to the prurient interest in sex of homosexuals, the use of expert testimony would nonetheless not be dictated, in light of the increase in societal awareness and understanding of homosexuality and other sexual preferences in the thirteen years since the *Mishkin* decision. Based on their own experiences and exposure to literature and other communications discussing sexual practices and attitudes, fact-finders are capable of evaluating the nature of allegedly obscene materials, without the assistance of an "expert." Indeed, this perspective is reflected in the most recent case in this jurisdiction addressing the need for expert testimony in obscenity cases, *Commonwealth v. Rodgers, supra.*[8] In *Rodgers,* the books and films at issue contained numerous color photographs graphically depicting acts of heterosexual intercourse, homosexual cunnilingus by two females, various degrees of penetration, cunnilingus, fellatio and sodomy. Nonetheless, the Supreme Court concluded that no extrinsic evidence was required to establish the material's prurient appeal:

> To say the jury need expert help to decide if this material is "obscene" borders on the ridiculous.

*Id.,* 459 Pa. at 136, 327 A.2d at 121.

■ Appellant's final claim of insufficiency questions the adequacy of proof concerning his knowledge of the obscene nature of the magazine purchased.

Knowledge or scienter is an essential element in an obscenity conviction. As the statute indicates,

> (a) Offenses defined—No person, knowing the obscene character of the materials involved, shall:
>
> \* \* \* \* \* \*
>
> (2) sell, lend, distribute, exhibit, give away or show any obscene materials to any person 17 years of age or older
> . . .

Section (b) then defines "knowing" as:

> "Knowing." As used in subsection (a), knowing means having general knowledge of, or reason to know or a

8. We note here merely that *Rodgers* was decided ten years ago.

belief or ground for belief which warrants further inspection or inquiry of, the character and content of any material described therein which is reasonably susceptible of examination by the defendant.

18 Pa.Cons.Stat. § 5903.

In reviewing a challenge to the sufficiency of the evidence, all evidence favorable to the Commonwealth must be accepted as true, as must all reasonable inferences which may be drawn from that evidence. *Commonwealth v. Ilgenfritz*, 466 Pa. 345, 353 A.2d 387 (1976).

There is no dispute that appellant did not examine the specific article purchased by Detective Brosha, but that he merely processed the sale, without viewing the contents. Nonetheless, the other evidence of record sufficed to prove beyond a reasonable doubt that appellant had reason to know or to inquire into the obscene nature of the material in question. Appellant was the sole employee seen in the store at the time of the sale, and in Detective Brosha's words, "was running the store." (N.T. pp. 30–36) The detective also testified to the pictorial content of the covers of approximately 30–40 magazines displayed in the clearly demarcated "adult" section from which "Staghorn, Volume no. 1" was chosen. Although some of the magazines were wrapped in clear cellophane so that the inside pages could not be viewed, performances of sexual acts were clearly depicted on the covers of the magazines. As noted, the conduct there portrayed included cunnilingus, fellatio, sexual acts with animals, homosexuality and lesbianism. In fact, Detective Brosha could not recall seeing any materials available for purchase in the adult section of the store that did *not* deal with sexual activities. Finally, after selecting one such magazine, with its sexually explicit cover page, the detective purchased it, handing it to appellant face-up. Thus, we find in the record sufficient evidence of appellant's knowledge of the magazine's nature to sustain a conviction. *In accord, see Commonwealth v. Croll*, 331 Pa.Super. 107, 480 A.2d 266 (1984); *Commonwealth v. Doe*, 316 Pa.Super. 1, 462 A.2d 762 (1983).

## V. *Weight of the Evidence*

Lastly, appellant contends that the verdict is against the great weight of the evidence. Appellant's analysis here, however, amounts to a partial reassertion of his attack on the sufficiency of the evidence.[9] Thus, this claim is without merit.

Accordingly, the judgment of sentence is affirmed.

---

[9.] Specifically, appellant contends that no evidence was presented to establish his knowledge, contemporary community standards or the magazine's appeal to prurient interests.