563 A.2d 901

**COMMONWEALTH of Pennsylvania**

v.

**Marjorie A. McCOOL, Appellant.**

Superior Court of Pennsylvania.

Argued March 28, 1989.

Filed Aug. 7, 1989.

Howard N. Stark, Allentown, for appellant.

Robert F. Hawk, Asst. Dist. Atty., Butler, for Com.

Before WIEAND, DEL SOLE and MELINSON, JJ.

WIEAND, Judge:

Marjorie McCool was tried by jury and was found guilty of selling obscene materials in violation of 18 Pa.C.S. § 5903(a)(2).[1] She was sentenced to make restitution and undergo imprisonment for not less than three (3) months nor more than six (6) months, to be followed by probation for an additional year. On direct appeal, McCool challenges her conviction on federal constitutional grounds and argues that the evidence was insufficient to sustain the guilty verdict. We find no merit in the arguments which she has advanced and affirm the judgment of sentence.

On September 22, 1986, an undercover state trooper entered the Adult Book Store at 693 Pittsburgh Road, Butler, for the purpose of determining the presence of obscene materials depicting homosexual activity. He purchased from Marjorie McCool, who was employed as a clerk, an eight millimeter film depicting homosexual activity entitled "California Hot Dog, in the Gardener." At McCool's trial, the trooper's testimony established these facts, and the Commonwealth showed the film to the jury. The Commonwealth then rested. McCool offered no evidence, and the jury found her guilty of violating the statute.

In *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), the Supreme Court established a tripartite test for determining those materials which are obscene and can be prohibited without infringing upon constitutional guarantees of freedom of speech and of the press. That

---

1. The statutory proscription is as follows:
    No person, knowing the obscene character of the materials involved, shall:
    . . . .
    (2) sell, lend, distribute, exhibit, give away or show any obscene materials to any person 17 years of age or older or offer to sell, lend, distribute, exhibit or give away or show, or have in his possession with intent to sell, lend, distribute, exhibit or give away or show any obscene materials to any person 17 years of age or older, or knowingly advertise any obscene materials in any manner;
    . . .

tripartite test has been mirrored by 18 Pa.C.S. § 5903(b), which defines obscene materials as follows:

Any literature, including any book, magazine, pamphlet, newspaper, storypaper, comic book or writing, and any figure, visual representation, or image including any drawing, photograph, picture or motion picture, if:

(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

Despite the fact that the Pennsylvania statute is identical to the Supreme Court's definition of obscenity in *Miller v. California, supra,* appellant argues that the statute is unconstitutionally vague for failing to state specifically the standard by which the third prong of the test is to be measured.

A criminal statute is unconstitutionally vague when the activity proscribed therein is described in such ambiguous terms that people of ordinary intelligence must guess at its meaning and would differ as to its application. *Commonwealth v. Westcott,* 362 Pa.Super. 176, 523 A.2d 1140 (1987); *Commonwealth v. Stenhach,* 356 Pa.Super. 5, 514 A.2d 114 (1986). To withstand a vagueness challenge, a statute must set reasonable guidelines for law enforcement officials and courts sufficient to avoid arbitrary and discriminatory enforcement. *Commonwealth v. Stenhach, supra.* See also: *Waters v. McGuriman,* 656 F.Supp. 923 (E.D.Pa.1987). A statute is presumed to be constitutional, however, and if the wording thereof supports a construction which would render it constitutional, that construction must be adopted. *Hartford Accident and Indemnity Co. v. Insurance Commissioner,* 505 Pa. 571, 482 A.2d 542 (1984); *Commonwealth v. Trill,* 374 Pa.Super. 549, 543 A.2d 1106 (1988).

In *Commonwealth v. Hulehan,* 338 Pa.Super. 309, 487 A.2d 980 (1985), the Superior Court rejected a general vagueness challenge to the Pennsylvania statute, holding that *Miller v. California, supra,* was controlling.

Appellant's argument receives no additional support from the Supreme Court's later decision in *Pope v. Illinois,* 481 U.S. 497, 107 S.Ct. 1918, 95 L.Ed.2d 439 (1987). There the defendant had been found guilty of violating an Illinois statute which had been construed to incorporate the third prong of the tripartite *Miller* test.[2] The jury, however, had been instructed that the literary, artistic, political, educational or scientific value of an allegedly obscene work was to be determined by reference to community standards. This, the Supreme Court held, had been a constitutional error. The correct inquiry, the Court held, was "whether a reasonable person would find such value in the material, taken as a whole." *Pope v. Illinois, supra,* 481 U.S. at 501, 107 S.Ct. at 1921, 95 L.Ed.2d at 445. The Supreme Court, however, did not change the *Miller* definition or imply that a statute would be unconstitutional for vagueness if it failed to specify the "reasonable man" standard in the third prong.

■ The absence of a reference to the "reasonable man" standard in the Pennsylvania statute does not render the statute unconstitutionally vague. See: *Childress v. State of Texas,* 751 S.W.2d 941 (C.A.Tex.1988) (where wording of statute was same as standard in *Miller* and did not inject community standards in value formulation, the state statute was not impermissibly vague under *Pope* ). The statute specifically defines obscene materials in a manner consistent with the Supreme Court definition in *Miller* and in a manner sufficient to permit people of ordinary intelligence to ascertain its meaning.[3] This is sufficiently specific.

2. By the time the case reached the United States Supreme Court, the Illinois statute had been repealed and replaced with a statute identical to the Pennsylvania statute, including in all respects the standard suggested in *Miller.*

3. The jury was charged in accordance with *Pope v. Illinois; supra,* that the reasonable man standard was to be applied in determining wheth-

Therefore, we reject appellant's attack on the constitutionality of the Pennsylvania statute.

Appellant next contends that the decision of the Pennsylvania Supreme Court in *Commonwealth v. Bonadio*, 490 Pa. 91, 415 A.2d 47 (1980), which held invalid a statute making criminal an act of voluntary deviate sexual intercourse between consenting adults, established state-wide standards which permit deviate sexual intercourse between consenting adults. Because the film purchased by the state trooper in the instant case portrayed sexual activity between consenting adult males, she argues, it could not properly be found to violate contemporary community standards. This argument ignores the basis for the Court's decision in *Bonadio*.

In *Commonwealth v. Bonadio, supra*, the Court held that the criminal statute proscribing deviate sexual intercourse between consenting adults drew an arbitrary and unreasonable distinction between consenting sexual partners who were married and those who were not. Such a classification, the Court said, violated the constitutional guarantee of equal protection. The Court also determined that the statute was an improper exercise of the police power because "[n]o harm to the secular interests of the community [was] involved in atypical sex practice *in private* between consenting adult partners." *Id.*, 490 Pa. at 96, 415 A.2d at 50 (emphasis added), quoting Model Penal Code § 207.5—Sodomy & Related Offenses. Comment (Tent. Draft No. 4, 1955). The Court's reasoning does not support the argument made by appellant in the instant case. Although holding that deviate sexual acts conducted in private by consenting adults cannot be made criminal, the Court did not prevent the legislature from making it criminal to offer for sale or sell photographic depictions of such conduct *to the public*. Neither did the Court thereby suggest that acts of deviate sexual intercourse, if depicted in photographs or on film, would be outside the realm of

er the film sold by appellant was lacking in serious literary, artistic, political, educational or scientific value.

obscenity which is unprotected by the First Amendment of the Constitution of the United States. To accept appellant's argument would be to hold that sexual conduct which is not punishable when conducted in private must be equally permissible if reproduced and portrayed in public renderings. We reject such an argument.

Finally, appellant argues that the film was directed to a clearly defined deviant group, i.e., homosexuals, and, therefore, expert testimony was necessary to assist the jury in determining whether the material appealed to the prurient interest of homosexuals as a group. Because such a conclusion would be beyond the ken of jurors, she argues, the Commonwealth could not show that the film appealed to the prurient interest without expert testimony. This argument is based on Supreme Court decisions in *Mishkin v. State of New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966), and *Paris Adult Theatre I v. Slaton*, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973). In *Mishkin*, the Court said:

> "Where the material is designed for and primarily disseminated to a clearly defined deviant sexual group, rather than the public at large, ... [w]e adjust the prurient-appeal requirement to social realities by permitting the appeal of this type of material to be assessed in terms of the sexual interests of its intended and probable recipient group[.]"

*Id.* at 508–509, 86 S.Ct. at 963–964, 16 L.Ed.2d at 61–62. In *Paris Adult Theatre I*, the Court expressly reserved judgment on whether expert testimony was necessary to establish prurient appeal where the group to which the material was directed was "such a bizarre deviant group that the experience of the trier of fact would be plainly inadequate to judge." *Id.* at 56 n. 6, 93 S.Ct. at 2634 n. 6, 37 L.Ed.2d at 456 n. 6.

In the instant case, the trial court determined that there had been no evidence that the film was directed to a particular sexual group. The film, the court determined, had been available in an area of the adult book store which had been open to the public generally; it had not been

placed separately or labeled specifically. The trial court held, therefore, that expert testimony was unnecessary to prove that the film appealed to the prurient interest.

In *Commonwealth v. Hulehan, supra,* the Superior Court held that expert testimony was unnecessary to establish that a magazine entitled "Staghorn, Volume no. I," which depicted sexual acts between males, appealed to the prurient interest of a particular group. The Court determined that the content of the magazine alone did not establish that it had been targeted to a specific group; and, therefore, it was within the jury's ability to make a factual determination without the need for expert testimony. The Court further held that even if the magazine had been directed to a particular group, expert testimony was not necessary. The Court said:

> [E]ven were we to find that "Staghorn, Volume no. 1" appeals primarily to the prurient interest in sex of homosexuals, the use of expert testimony would nonetheless not be dictated, in light of the increase in societal awareness and understanding of homosexuality and other sexual preferences in the thirteen years since the *Mishkin* decision. Based on their own experiences and exposure to literature and other communications discussing sexual practices and attitudes, fact-finders are capable of evaluating the nature of allegedly obscene materials[ ] without the assistance of an "expert."

*Id.* at 321, 487 A.2d at 986.

■ Similarly in the instant case, even if the evidence did indicate that the film was directed to homosexuals as a clearly defined deviant sexual group, expert testimony was unnecessary to aid the jury in determining specifically whether the film appealed exclusively to the sexual interests of a specific deviant group, or whether, more generally, the content of the film was obscene under *Miller.*

The judgment of sentence is affirmed.

DEL SOLE and MELINSON, JJ. concur in the result.