617 A.2d 323

**COMMONWEALTH of Pennsylvania**

v.

**Gary Ward GREENICH, Appellant.**

**COMMONWEALTH of Pennsylvania**

v.

**Donald Nicholas FETZNER, Appellant.**

Superior Court of Pennsylvania.

Argued March 18, 1992.

Filed Oct. 21, 1992.

Reargument Denied Jan. 4, 1993.

552

Carl M. Janavitz, Pittsburgh, for appellants.

James K. Vogel, Asst. Dist. Atty., Erie, for Com., appellee.

Before ROWLEY, President Judge, and CIRILLO and BROSKY, JJ.

BROSKY, Judge.

Gary Ward Greenich and Donald Nicholas Fetzner file consolidated appeals, at No. 902 Pittsburgh 1991 and No. 903 Pittsburgh 1991, from the judgments of sentence entered against them by the trial court. Their pre-trial proceedings were consolidated but their trials were severed. Greenich was

convicted, by a jury, of obscene and other sexual materials and performances.[1] He was sentenced to a term of imprisonment of six to twenty-three months and ordered to pay a fine of $3,500.00. Fetzner was convicted, by a separate jury, of the same crime. He was sentenced to a term of imprisonment of six to twenty-three months and ordered to pay a fine of $10,000.00.

Appellants have submitted one appellate brief and their statement of questions involved is as follows.

I. Whether the lower court erred in failing to grant appellant Greenich's motion for a mistrial following the testimony of Mary Beth Hostert that she had made her purchases as a member of a task force on organized crime?

II. Whether the lower court erred in denying appellant Greenich an opportunity to present the testimony of Dr. Scott regarding community standards?

III. Whether the lower court erred in failing to allow appellants to argue the implications of legislative amendment to 18 Pa.C.S.A. § 5903(A)(2) and (B)?

IV. Whether the lower court erred in denying appellant Greenich an opportunity to present the testimony of Dr. Scott regarding deviant groups and in denying appellant Greenich a *Mishkin* charge?

V. Whether the lower court erred in denying appellant Fetzner an opportunity to testify regarding deviant groups and in denying appellant Fetzner's request for a *Mishkin* charge?

VI. Whether the lower court erred in denying appellant Fetzner the opportunity to present his proffered testimony regarding scienter, in as much as, such disallowance rendered 18 Pa.C.S.A. § 5903 unconstitutional as applied?

VII. Whether the lower court erred in denying appellant Fetzner's motion to quash the informations because failure to apply the doctrine of collateral estoppel as embodied in 18 Pa.C.S.A. 110(2) in the context of this case, is violative of due process?

1. 18 Pa.C.S. § 5903.

Appellant's Brief at 2–3. We affirm the judgments of sentence of the trial court.

Appellant Greenich was the manager of a store which offered for sale, *inter alia*, two magazines, *Lisa's World* and *Best of Cum*, which were alleged to be obscene and which involved depictions of sadomasochistic behavior, bondage, homosexuality and males ejaculating. Mr. Greenich stipulated that he was the manager of the store and that he had knowledge of the nature and content of the magazines. Appellant Fetzner was the owner of a business that offered for sale, *inter alia*, two magazines, *Into Bondage* and *Bondage Classics*, which were alleged to be obscene and which involved depictions of homosexuality, group sex, heterosexual sex and sadomasochistic behavior. Mr. Fetzner stipulated that he was the manager of the store and that he was aware of the nature and content of the magazines.

■ Appellant Greenich first claims that the trial court erred in failing to grant a mistrial after Pennsylvania State Trooper Mary Beth Hostert testified that at the time of Mr. Greenich's arrest she was working with the State Police Organized Crime Unit. Appellant avers that the jury could have inferred that he was the subject of an investigation into organized crime.

Ms. Hostert, who testified that she was no longer a state trooper at the time of appellant's trial, testified that her "last two years [with the state police] was [Sic] spent working with the organized crime unit out of western Pennsylvania." N.T., 3/8/91, at p. 54. This testimony occurred at the very beginning of the Commonwealth's direct examination, which was designed to review Ms. Hostert's work history with the state police. The trial court, which additionally noted that Ms. Hostert had also stated that she had investigated robberies and domestic disputes, offered to give a cautionary jury instruction stating that Ms. Hostert's division assignment at the time of the instant crimes bore no relation to the instant crimes. *Id.* at 55. Appellant's counsel stated that he did not want a cautionary instruction. *Id.* at 56. Appellant's counsel then changed his mind and agreed to a cautionary instruction.

*Id.* at 57. The trial court then informed the jury that Ms. Hostert's prior testimony only related to her "background" as a state trooper. The trial court stated,

> I want it to be clear to you that there is no relationship in this case between her involvement in the organized crime unit and the facts of this case. They have nothing to do with each other. This case is not about organized crime. There should be no implication taken from the fact that she was assigned to that organization at any time during the time that she was in the state police. And generally I'm telling you to disregard it.

*Id.* at 59. Appellant's counsel indicated that he was satisfied with the trial court's remarks to the jury. *Id.*

Ms. Hostert never stated that she was assigned to the organized crime unit at the time that she purchased the magazines. She simply stated that she was assigned to that unit during her final two years with the state police. Even if the jury were to (a) determine that the two year time frame coincided with appellant's arrest, *and,* (b) assume that appellant was suspected of activities related to organized crime, the trial court's immediate, explicit cautionary instruction would have dispelled any mistaken impressions reached by the jury. Hence, Mr. Greenich clearly suffered no prejudice and this claim is devoid of merit.

■ Appellants' second claim is that the trial court erred in failing to allow Dr. Joseph E. Scott, a sociologist, to give expert testimony regarding contemporary community standards in Pennsylvania.[2]

The trial court conducted an in depth *in camera* review of Dr. Scott. N.T., 3/7/91, at pp. 6–34. Dr. Scott stated that he was in the initial stages of undertaking a project to study sadomasochistic behavior.[3] *Id.* at 11–12. He had also been

---

**2.** In determining contemporary community standards the "community means the State." 18 Pa.C.S. § 5903(b).

**3.** We reiterate that Mr. Greenich was accused of selling two magazines that contained exhibitions, principally in the form of photographs, of sadomasochistic behavior, bondage, homosexuality and males ejaculating.

involved in a completed study regarding the varying levels of violence in movies and rock-videos. *Id.* at 12. Dr. Scott also participated in "studies as to whether or not certain sexually explicit materials are acceptable to a reasonable degree in various and sundry communities[.]" *Id.* He also examined the magazines involved in the prosecution against Mr. Greenich. Dr. Scott visited video stores that specialized in adult ("X"-rated) videos, and, those that rented or sold all types of videos. He also viewed, in over thirty counties in this Commonwealth, sexually explicit material. *Id.* at 18. Dr. Scott visited over 200 Pennsylvania video stores that carried videos that solely depicted males ejaculating. *Id.* at 24. He stated that the volume of videos depicting sadomasochistic behavior [4] were far less common than the total amount of videos depicting males ejaculating. *Id.* Based upon all of his aforementioned research Dr. Scott testified that videos or magazines depicting males ejaculating, such as the instant magazines, were "acceptable [to] the average adult in the state of Pennsylvania", and, the instant sadomasochistic magazines would be offensive to the average Commonwealth resident. *Id.* at 27. He stated that the instant sadomasochist magazines would not have been offensive to a Commonwealth resident who was a sadomasochist.

"Generally speaking, the admission of expert testimony is a matter left largely to the discretion of the trial court, and its rulings thereon will not be reversed absent an abuse of discretion." *Palmer v. Lapp,* 392 Pa.Super. 21, 27, 572 A.2d 12, 15 (1990); *Commonwealth v. Brown,* 408 Pa.Super. 246, 250, 596 A.2d 840, 842 (1991).

It is not required that expert testimony be presented in an obscenity prosecution. *Commonwealth v. Hulehan,* 338 Pa.Super. 309, 487 A.2d 980 (1985); *Long v. 130 Market St. Gift & Novelty, Etc.,* 294 Pa.Super. 383, 440 A.2d 517 (1982). Magazines themselves are adequate evidence for a jury to determine whether the average person would find the material

---

4. Dr. Scott testified that individuals who viewed this type of "performance" belonged to a "deviant subgroup." N.T., 3/7/91, at 25.

appealing to prurient interests. *Id.* Our Court, in *Long v. 130 Market St. Gift & Novelty, Etc., supra,* stated,

> The contemporary community standard element, necessary to establish the obscenity or lack of obscenity of published material is not concerned with the availability of the material, but rather with its acceptability. The fact that one can walk into an "adult book store" in some of the towns and cities of the Commonwealth and purchase a film or publication devoted, on the whole, to bestiality, sado-masochism, or any of a number of other often-questioned sexual predilections, by no means implies that the average Pennsylvanian would not find the subject matter appealing to prurient interests. The statewide availability of sexually explicit films and publications does not bespeak their acceptability.

*Id.* at 392, 440 A.2d at 521.

In 1992, when adults are exposed to varying degrees of exhibitions or depictions of sexual acts in magazines, books, videos, network television, cable television and movies, "[t]o say [a] jury need[s] expert help to decide if this material is 'obscene' borders on the ridiculous." *Commonwealth v. Hulehan, supra,* 338 Pa.Super. at 321, 487 A.2d at 986.

We find that Dr. Scott's proffered testimony related almost exclusively to the *availability* of the type of sexually explicit materials similar to the magazines involved in the instant case. Since Dr. Scott could have provided little assistance to the jury in regard to the *acceptance* of the material by Pennsylvania residents we find that his proffered testimony would not have aided the jury in their determination of contemporary community standards. Hence, the trial court did not abuse its discretion in failing to permit Dr. Scott to testify. *Commonwealth v. Brown, supra; Long v. 130 Market St. Gift & Novelty, Etc., supra.*

Furthermore, the jury was quite capable of determining, without the assistance of an expert, whether *Lisa's World* and *Best of Cum* were obscene. Since the mass media has wrought a proliferation in our exposure to various exhibitions and depictions of sexual acts, we find that exhibitions of men ejaculating, male or female homosexuality, or, of one person

degrading or applying violence to another during a sexual act are not so alien to the average Pennsylvania juror that he or she would be unable to determine if the exhibitions were obscene. Hence, the trial court properly determined that the instant jury was quite capable of determining the issues in the absence of expert testimony. *Commonwealth v. Hulehan,* *supra.*

We affirm appellants' third claim based upon our independent review of the record, and, the August 13, 1991 (*Commonwealth v. Greenich,* No. 1809 Erie County 1990) and August 5, 1991 (*Commonwealth v. Fetzner,* 1690 Erie County 1990) trial court opinions, at pp. 1–2 and pp. 14–15, respectively, of the Honorable John A. Bozza of the Court of Common Pleas of Erie County.

■ We affirm appellant's fourth issue based upon our independent review of the record, and, the trial court's August 13, 1991 opinion, at 1–2, and August 5, 1991 opinion, at 10–14. We wish to add that our Court, in *Commonwealth v. Hulehan,* *supra,* rejected the notion that expert testimony should be used to show that material directed to a "deviant sexual group" (homosexuals, sadomasochists, etc.) does or does not appeal primarily to the prurient interest of members of that particular group. *Id.* The panel reasoned that the jurors could decide for themselves whether the material, which was allegedly directed to a "deviant sexual group", was obscene. *Id.*

Our Court also stated in *Hulehan* that even if magazines were composed solely of photographs portraying sexual acts between men it could not be concluded that the content of the magazines was aimed at, or appealed only to, a clearly defined sexual group. *Id.* Hence, in the instant case, the fact that the confiscated magazines may have contained photographs depicting sexual acts (a) between males; (b) wherein individuals were dressed in bizarre costumes; and/or, (c) in which violence was allegedly being applied to individuals, it cannot be concluded that the content of the magazines was aimed at, or appealed only to, a clearly defined sexual group. *Id.* Accordingly, the trial court did not err in failing to give a jury

charge regarding *Mishkin v. New York*, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed 2d 56 (1966) (In *Mishkin*, which was analyzed by our Court in *Hulehan*, the United States Supreme Court stated that when sexual material is designed for and primarily disseminated to a clearly defined sexual group, the prurient appeal component of the obscenity standard may be adjusted to consider the appeal of the material to that sexual group).

We affirm appellant's fifth issue based upon our independent review of the record, the trial court's August 5, 1991 opinion, at pp. 10–14, and the reasoning that we utilized in addressing issue number four, *supra.*

We affirm appellant's sixth issue based upon our independent review of the record, and, the trial court's August 5, 1991 opinion, at pp. 7–10.

We affirm appellant's seventh issue based upon our independent review of the record, and, the trial court's August 5, 1991 opinion, at pp. 1–6.

In conclusion, we find all of the issues raised by Mr. Greenich and Mr. Fetzner to be without merit. Accordingly, the trial court did not err in denying Mr. Fetzner's motion to quash the informations filed against him, and, did not err in denying appellants' motions for new trials.

Judgments of sentence affirmed.

CIRILLO, J., files a concurring and dissenting opinion.

CIRILLO, Judge, concurring and dissenting:

I join the majority in affirming the judgment of sentence imposed on Greenich. I cannot, however, join the majority's disposition of the sixth issue on appeal: whether the trial court erred in denying appellant Fetzner the opportunity to present his proffered testimony regarding scienter, inasmuch as, such disallowance rendered 18 Pa.C.S.A. § 5903 unconstitutional as applied? Our Crimes Code, 18 Pa.C.S. § 101 *et seq.*, lists among its purposes the following two principles:

(3) To safeguard offenders against excessive, disproportionate or arbitrary punishment.

(4) To give fair warning of the nature of the conduct declared to constitute an offense, and of the sentences that may be imposed on conviction of an offense.

18 Pa.C.S. § 104. I believe that Fetzner has been subjected to arbitrary punishment since he could not possibly have received fair warning that his conduct was criminal. For this reason, I respectfully dissent.

Obscene materials are not protected speech under the First Amendment. *Miller v. California*, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973), *reh. denied*, 414 U.S. 881, 94 S.Ct. 26, 38 L.Ed.2d 128 (1973); *Long v. 130 Market Street Gift & Novelty of Johnstown*, 294 Pa.Super. 383, 440 A.2d 517 (1982); *see also Commonwealth v. Croll*, 331 Pa.Super. 107, 480 A.2d 266 (1984); *Commonwealth v. Hulehan*, 338 Pa.Super. 309, 487 A.2d 980 (1985); *Commonwealth v. Stock*, 346 Pa.Super. 60, 499 A.2d 308 (1985). A state may regulate obscenity through criminal sanctions where it can demonstrate a legitimate interest in such regulation. *Long, supra; Commonwealth v. Doe*, 316 Pa.Super. 1, 462 A.2d 762 (1983). Thus, the General Assembly enacted section 5903 of the Crimes Code, which states:

(a) No person, knowing the obscene character of the materials or performances involved, shall:

\* \* \* \* \* \*

(2) sell, lend, distribute, exhibit, give away or show any obscene materials to any person 17 years of age or older or offer to sell, lend, distribute, exhibit or give away or show, or have in his possession with intent to sell, lend, distribute, exhibit or give away or show any obscene materials to any person 17 years of age or older, or knowingly advertise any obscene materials in any manner. . . .

18 Pa.C.S. § 5903(a)(2).[1] Material, including any book or magazine, is obscene if:

1. After these offenses occurred, the obscenity sections of the Crimes Code were amended by Act of December 19, 1990, P.L. 1332, No. 207, § 1, effective on that date. The changes, in section 5903(a)(2) solely

(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

18 Pa.C.S. § 5903(b). *See also Miller, supra.* The legislature defined "knowing" as:

having general knowledge of, or reason to know or a belief or ground for belief which warrants further inspection or inquiry of, the character and content of any material described therein which is reasonably susceptible of examination by the defendant.

*Id.*

Problems arise, however, in determining whether material is obscene or merely pornographic. Webster's Dictionary defines obscenity as "disgusting to the senses: REPULSIVE [;] abhorrent to morality or virtue [or] designed to incite lust or depravity." Webster's New Collegiate Dictionary 815 (9th ed. 1986). Pornography is defined by Webster's as "the depiction of erotic behavior (as in pictures or writing) intended to cause sexual excitement [or] material (as books or a photograph) that depicts erotic behavior and is intended to cause sexual excitement." *Id.* at 916. Simply put, all obscenity is pornographic, yet not all pornography is obscene. The key importance of this distinction is that the statute may only prohibit that which is obscene, not pornographic. To determine what is obscene as opposed to pornographic, we rely on juries. It is the jury that decides whether a particular book or magazine contains obscene materials, not an individual, not the legislature, not law enforcement officials, and not a judge. Here lies the downfall of Fetzner's obscenity conviction.

It is not until the jury stamps pornographic materials with the label of obscenity that a person is notified that what he or

increase the age of proscription for obscenity sales, etc., to eighteen-year-olds.

she sold was actually obscene. How can a person, therefore, *knowingly* sell obscene materials without notice that what he or she sells is obscene in the first place? To start, a person might read the statutory definition of "sexual conduct" since the depiction or description of sexual conduct is necessary to convict under the statute. The statute, at the time of the offense, defined sexual conduct as *"[p]atently offensive* representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, and patently offensive representations or descriptions of masturbation, excretory functions and lewd exhibition of the genitals." 18 Pa.C.S. § 5903(b) (emphasis added).[2] The determination of patent offensiveness is one made by a jury; no seller of sexually explicit materials can be expected to know if a jury will later find them patently offensive.

Under the statute, a merchant may be convicted where the merchant has general knowledge of the magazine's contents, reason to know or a belief or a ground for belief that an inspection into the character of the magazines is necessary. *See* 18 Pa.C.S. § 5903(b). Here, Fetzner stipulated to the fact that he knew the nature of the contents of the magazines. A merchant may know that the magazines are pornographic, yet not know whether or not they are obscene. Fetzner did, however, make an attempt to inquire into the obscene nature of the materials, and evidence in the record suggests that after his own investigation, he could conclude that these items were not obscene.

During argument on pre-trial motions, the trial court heard statements from the defense attorney which suggested that, in an attempt to ascertain whether the materials Fetzner was selling were obscene, he contacted the Erie County District Attorney's Office and the Erie County Coalition Against Vio-

2. The amended section 5903(b) defines sexual conduct as:
   Patently offensive representations or descriptions of ultimate sexual acts, normal or perverted, actual or simulated, including sexual intercourse, anal or oral sodomy and sexual bestiality; and patently offensive representations or descriptions of masturbation, excretory functions, sadomasochistic abuse and lewd exhibition of the genitals. 18 Pa.C.S. § 5903(b) as amended by Act of December 19, 1990, P.L. 1332, No. 207, § 1, effective immediately.

lent Pornography. The district attorney's office was not willing to assist Fetzner in censoring the materials. It is unclear what response the Coalition gave Fetzner. Further, the Pennsylvania State Police had previously seized and reviewed certain magazines in the store but did not charge him under the statute on that occasion. These seized materials were also returned to Fetzner. Fetzner also was tried twice for selling obscene materials. A previous trial in Erie County for obscenity, apparently on similar yet not identical material, ended in acquittal for Fetzner. However, prior to his arrest on these charges, Fetzner had been convicted in Crawford County for a violation of section 5903.

The trial court did not permit Fetzner to present this evidence of his confusion regarding whether the materials were obscene under the contemporary community standards. Excluding the evidence, in my opinion, constituted reversible error by the trial court. "Admission or exclusion of evidence lies within the sound discretion of the trial judge." *Commonwealth v. Barnhart*, 345 Pa.Super. 10, 33, 497 A.2d 616, 628 (1985). In order to reverse a trial court order excluding evidence, a reviewing court must find an abuse of discretion and actual prejudice. *Commonwealth v. Wagner*, 383 Pa.Super. 128, 556 A.2d 462 (1989). It is axiomatic that any evidence tending to prove or disprove an element of a crime is admissible as relevant. *See Commonwealth v. Uhrinek*, 518 Pa. 532, 544 A.2d 947 (1988) (accused has fundamental right to present relevant, defensive evidence). The evidence excluded was intended to disprove the element of a knowing violation of the obscenity laws. Thus, evidence of Fetzner's confusion was relevant and should have been presented to the jury to determine whether Fetzner committed a knowing violation. *Uhrinek, supra.*

Moreover, the evidence itself concerns whether Fetzner indeed had notice that his magazine were obscene. The evidence shows that he heeded the statutory definition of knowledge and made inquiries to law enforcement officials concerning the potential obscenity of the materials he sold, or at a minimum, materials similar to those he had sold in the

past. Obviously, magazines are available for limited periods of time. A salesperson of pornographic magazines may, therefore, have to rely on comparing previously scrutinized materials with those put on sale later. In *Commonwealth v. Dell Publications, Inc.*, 427 Pa. 189, 233 A.2d 840 (1967), the Pennsylvania Supreme Court set forth two ways an individual may attempt to discern whether or not material is obscene:

There are two yardsticks by which contemporary community standards may be judged. One is to compare the challenged book to other books which have either been held entitled to the protection of the First Amendment or, in the absence of litigation, which meet contemporary community standards and are substantially similar to the challenged book. The other is to consider the reception the book received from the community when it was released.

Clearly, Fetzner had attempted to satisfy this first "yardstick." He compared the materials to the earlier prosecution materials and inquired with local officials and groups about the contemporary community standards to determine whether these materials were obscene or not. In my opinion, Fetzner did just what the statute required him to do; however, he unfortunately received an unsympathetic and unhelpful response to his inquiries.

Allowing testimony of these prior events could have negated the Commonwealth's proof of Fetzner's knowledge that the materials he sold were obscene. I, therefore, believe the trial court abused its discretion by failing to allow Fetzner to testify about his inquiries, prior adjudications, and the prior confiscations at his store by the district attorney. *Barnhart, supra; Uhrinek, supra; Wagner, supra.* Since Fetzner attempted to obtain notice of the contemporary community standards and present this evidence to demonstrate the basis for his claim of lack knowledge or notice, he should not be penalized by the courts. Not allowing such evidence effectively denied Fetzner a defense to the charge and constituted, in my opinion, actual prejudice. *Wagner, supra.* Moreover, the majority, by affirming the trial court's decision, eliminates the *mens rea* requirement of knowledge for a violation of the

statute and places, in its stead, strict liability. I believe this is so because the nature of this obscenity trial was such that once the jury determined the magazines to be obscene, Fetzner had no available defense. Moreover, the failure to allow such proof frustrates the explicit policies of the crimes to decry arbitrary punishment and provide notification of criminal conduct. *See* 18 Pa.C.S. § 104(3) & (4).

I would, therefore, reverse Fetzner's judgment of sentence and remand for a new trial. I do, however, agree with my esteemed colleagues in the majority that Greenich's judgment of sentence should be affirmed.