2021 PA Super 134

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| ANDREW THOMAS ALEXANDER | : | |
| | : | |
| Appellant | : | No. 1487 MDA 2020 |

Appeal from the Judgment of Sentence Entered July 1, 2020
In the Court of Common Pleas of Lycoming County Criminal Division at
No(s):  CP-41-CR-0000305-2019

BEFORE:   STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:                              **FILED JUNE 29, 2021**

Andrew Thomas Alexander appeals the judgment of sentence entered by the Court of Common Pleas of Lycoming County (trial court) following a non-jury trial in which he was found guilty of one count of obscenity in violation of 18 Pa.C.S. § 5903(a)(3)(i) based on sexually explicit text messages he sent to an unidentified recipient.  Alexander now contends that the evidence of obscenity was legally insufficient, and that his text messages are statutorily and constitutionally protected communications.  Because his texts do not fit the statutory definition of obscene material, we reverse the conviction and vacate the judgment of sentence.

---

[*] Retired Senior Judge assigned to the Superior Court.

**I**.

The underlying facts of this case have been summarized by the trial court as follows:

Trooper Zachary Martin of the Pennsylvania State Police testified that on December 21, 2018, [Alexander] came to the barracks to report that someone was blackmailing him. [Alexander] permitted Trooper Martin to see and read text messages on [his] phone. [Alexander] explained that the previous evening he made contact with a female on an adult [dating] website. They exchanged cell phone numbers and continued texting each other. [Alexander] further explained that, because he was going to provide the phone to his daughter, he "factory reset" his phone and the only text messages remaining were from the morning of December 21, 2018.

Martin took photos of the text messages on [Alexander's] phone. Included in the texts were messages from [Alexander] to the other number asking among other things: "so you in high school?" followed by an emoji with heart eyes; "you at school now?"; "how old are you really?"; "be honest", to which the other number replied "16 on January 3"; "wow"; "how can I trust that you won't get me in trouble?"; "I never talked to a young girl like you before"; "you like older men?"; "have you ever had sex with an older guy?"; "so you want to fuck an older guy?"; "you have friends like you?"; "so when can we meet up? go out and have some fun together?"; "I can come pick you up and we can drive around and do something"; and "is there anything special you want to do?" followed by one emoji winking and another smiling.

A subsequent search of [Alexander's] phone pursuant to a search warrant disclosed other text messages sent by [Alexander] on December 20, 2018. These texts included statements by [Alexander] such as: "your pussy lips"; "you bi?"; "I'm rubbing my cock right now"; "show me something to turn me on"; "I'm getting harder baby"; "Can I see that pretty pussy?"; "make a video"; "of me rubbing my cock?"; "if you make a video of your tight pussy"; "pic for pic?"; "video for video?"; and "so you're in school?" Among the responses that [Alexander] received from his texts were: "ready daddy?", and "sorry my mom came home. I am supposed to be in bed, LOL school."

Trooper Martin interviewed [Alexander] on December 21, 2018. Among other things, [Alexander] admitted to sending nude pictures to the other phone number, that the individual he thought he was speaking to was only 15 years old and that had continued the sexually related dialog with someone who said they were 15. [Alexander] testified [at trial] that his intent was not to have a sexual relationship with another person . . . but to "role-play" or participate in a "fantasy." In fact, he testified that he actually believed that [the person who he was talking to] was his wife "being fraudulent" with him. He explained that this role-playing would cause he and his wife to fight and then argue and then "make up."

[Alexander's] wife . . . contradicted [him] in material respects. Significantly, while she would occasionally go on the website and pretend to be someone else, she never posed as a minor and never tried to "catch him" as part of a game. Further, she always let him know it was her and her purpose in catching him was to prove that he was straying from the marriage.

Trial Court Opinion and Order, 10/26/2020, at 1-5.

Alexander's text messages prompted the Commonwealth to charge him with several offenses involving sexual misconduct. However, at the conclusion of the trial, he was found not guilty of statutory sexual assault; corruption of minors; attempted corruption of minors; criminal use of a communication facility; and disseminating explicit sexual material to a minor.

The trial court acquitted Alexander of those offenses because there was no evidence that he was communicating with a minor, which was a necessary element of the crimes. That left just the obscenity count, which was predicated on the sexual content of Alexander's text messages and not the identity of the person who received them. The trial court analyzed the texts as if they were sent privately between two consenting adults.

Though it stated that it "did struggle" with the obscenity charge and acknowledged that the definition of obscene material in 18 Pa.C.S. § 5903(b) does not explicitly include sexually explicit text messages exchanged by two adults, the trial court found Alexander guilty. *See* Trial Transcript, 2/3/2020, at pp. 102-03. It reasoned that text messages may constitute obscene "material" because the statutory definition does not "expressly exclude" them, and the General Assembly must have intended for them to fall within the ambit of the obscenity statute. *Id.* It went on to find that because the messages appealed to the prurient interest, described patently offensive sexual conduct, and lacked any social value, Alexander's messages were "obscene" as defined in Section 5903(b). On the obscenity count, Alexander was sentenced to a prison term of 6 to 24 months, followed by 3 years of probation.[1]

Alexander filed a post-sentence motion in which he argued that the evidence of obscenity was insufficient to sustain his conviction and the motion was denied. He then timely appealed and the trial court filed a 1925(a) Opinion.[2]

---

[1] The trial court did not find that the nude photos Alexander sent were obscene material because they were neither admitted into the record nor described by any trial witnesses. The trial court considered the photos only insofar as they supported its conclusion that the *speech* within Alexander's text messages was obscene. *See* Trial Court Opinion and Order, 10/26/2020, at 5; *see also* ***Commonwealth v. Lebo***, 795 A.2d 987, 992 (Pa. Super. 2002) ("It is well-established that mere nudity is not obscenity.").

[2] The Commonwealth did not file an appellate brief in this matter.

**II**.

On appeal, Alexander contends that there is insufficient evidence[3] to sustain his obscenity conviction under 18 Pa.C.S. § 5903(a)(3)(i) because the statute does not make it a crime to send sexually explicit text messages to a consenting adult.  We find merit in this claim.[4]

Subsection 5903(a)(3)(i) only criminalizes the dissemination of obscene "material":

> No person, knowing the obscene character of the **materials** or performances involved, shall:  . . . . design, copy, draw, photograph, print, utter, publish or in any manner manufacture or prepare any obscene **materials**.

18 Pa.C.S. § 5903(a)(3)(i) (emphasis added).[5]

---

[3] A challenge to the sufficiency of the evidence presents a pure question of law and, as such, our standard of review is **de novo** and our scope of review is plenary.  **See Commonwealth v. Jacoby**, 170 A.3d 1065, 1076 (Pa. 2017).  The same standard of review applies with respect to questions of statutory interpretation.  **See Commonwealth v. Arroyo**, 991 A.2d 951, 955 (Pa. Super. 2010).

[4] Alexander has not raised the issue that the statute is unconstitutionally broad as applied to non-pictorial content, such as the words in a text message.  **See Ashcroft v. Free Speech Coalition**, 535 U.S. 234 (2002) (striking down statutory proscription of virtual images of minors engaged in sexual activity regardless of whether the images are obscene).

[5] Other provisions of the obscenity statute would prohibit the sending of text messages to a minor conveying "explicit and detailed verbal descriptions or narrative accounts of sexual excitement, sexual conduct, or sadomasochistic abuse and which, taken as a whole, is harmful to minors."  18 Pa.C.S. § 5903(c)(2).  Alexander was charged with this crime, and the trial judge acquitted him because there was no evidence that he was communicating with a minor.  **See** Trial Transcript, 2/3/2020, at p. 102.  Similarly, a person may

*(Footnote Continued Next Page)*

Obscene "material" is defined for the purposes of that subsection as:

**Any literature, including any book, magazine, pamphlet, newspaper, storypaper, bumper sticker, comic book or writing; any figure, visual representation, or image, including any drawing, photograph, picture, videotape or motion picture.**

18 Pa.C.S. § 5903(b) (definition of "Material") (emphasis added).

The statute goes on to define material as "obscene" if:

(1) the average person applying contemporary community standards would find that the subject matter taken as a whole appeals to the prurient interest;

(2) the subject matter depicts or describes in a patently offensive way, sexual conduct of a type described in this section; and

(3) the subject matter, taken as a whole, lacks serious literary, artistic, political, educational or scientific value.

18 Pa.C.S. § 5903(b) (definition of "Obscene").

This statutory definition of obscene material is based on the test announced by the United States Supreme Court in *Miller v. California*, 413 U.S. 15, 24 (1973). *See Commonwealth v. Bryner*, 654 A.2d 909, 912 (Pa. Super. 1995) (noting that the *Miller* test has been adopted by Pennsylvania's Legislature in defining what constitutes obscene material).

---

be convicted of harassment by texting obscene words or images to an unwilling recipient. *See* 18 Pa.C.S. § 2709(a)(4). The anonymity and consent of the person Alexander texted would have precluded conviction if that crime had been charged as well.

The United States Supreme Court has clarified that although obscenity is not protected by the First Amendment, "the government . . . may not criminalize the mere possession of obscene material involving adults." *United States v. Williams*, 553 U.S. 285, 288 (2008). Nor can a statute criminalize "the distribution of sexually graphic but nonobscene material." *Id*.

Here, even assuming that Alexander's texts were obscene under the *Miller* test, private and consensual text messages between two adults are not "material" within the meaning of subsection 5903(b). For the purposes of the statute, "obscene material" unambiguously refers to content made for public dissemination. This is clear from the definition of "material," which encompasses "any literature, including any book, magazine, pamphlet, newspaper, storypaper, bumper sticker, comic book or writing[.]" 18 Pa.C.S. § 5903(b).[6]

The defining terms for "material" necessarily exclude private speech exchanged via text messages by two consenting adults, even if that speech would qualify as obscene. *See Commonwealth v. Stock*, 499 A.2d 308 (Pa. Super. 1985) ("[T]he evil sought to be controlled by the statute is not the

---

[6] "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). "[P]enal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant." *Commonwealth v. Schiffler*, 879 A.2d 185, 189 (Pa. 2005).

mere possession or even the showing of obscene materials in private, but the commercial exploitation of such materials, or at the very least their exhibition in a public setting where the individual's right to privacy is not a significant factor.").

The speech in Alexander's texts was not literature or otherwise disseminated in a public setting, so it was not obscene "material" as contemplated by subsection 5903(a)(3)(i). His messages were simply lewd messages sent to a presumably consenting adult.

Accordingly, because the Commonwealth's evidence was insufficient to prove that Alexander violated subsection 5903(a)(3)(i), his conviction must be reversed.[7]

Conviction reversed and judgment of sentence vacated. Alexander is ordered discharged. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 06/29/2021

---

[7] Our disposition on this ground makes it unnecessary for us to consider Alexander's remaining claim that his messages are protected by his constitutional right to privacy.