J-S34036-22

2022 PA Super 179

COMMONWEALTH OF PENNSYLVANIA

v.

VINCENT SMITH

Appellant

:   IN THE SUPERIOR COURT OF
:           PENNSYLVANIA
:
:
:
:
:
:
:
:   No. 1256 WDA 2021

Appeal from the Judgment of Sentence Entered June 30, 2021
In the Court of Common Pleas of Allegheny County Criminal Division at
No(s): CP-02-CR-0008964-2018

BEFORE: DUBOW, J., MURRAY, J., and PELLEGRINI, J.[*]

OPINION BY PELLEGRINI, J.:               **FILED: OCTOBER 17, 2022**

Vincent Smith (Smith) appeals from the judgment of sentence imposed in the Court of Common Pleas of Allegheny County (trial court) following his entry of an open guilty plea to two counts of voluntary manslaughter and four counts of arson — endangering persons.[1] Smith challenges the legality of the multiple sentences the trial court imposed on his arson convictions where he set a single fire. Because we agree with Smith that only one sentence should have been imposed for arson, we reverse three of his arson convictions, vacate the judgment of sentence and remand for resentencing.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] **_See_** 18 Pa.C.S. §§ 2503, 3301(a)(1).

**I.**

The relevant facts and procedural history of this case are as follows. On February 26, 2018, four police officers from the Allegheny County and Swissvale Police Departments responded to Smith's residence to conduct a welfare check in an effort to locate a person who had been reported missing, John Van Dyke. The officers entered the residence through the basement and climbed up the stairs towards the sound of a voice. They came upon Smith and observed him striking matches and tossing them to the floor, igniting a fire that spread throughout the home. The officers quickly exited the residence and took up position outside, while Smith remained inside. Firefighters arrived at the scene and rescued Smith, who was taken to the hospital and treated for smoke inhalation. Police recovered the bodies of John Van Dyke and Steven Pariser from Smith's residence; both men had suffered obvious trauma to the backs of their heads.

Smith reported to police that Pariser had been his longtime friend, but that on the night of the incident, the men became involved in an altercation where he acted in self-defense. According to Smith, he threw the victims down the stairs after Pariser bit and grabbed at him and Van Dyke hit him on the head and hand with a hammer. Smith claimed that he had ingested pills and spread lighter fluid throughout the residence to ignite the fire because he wanted to kill himself.

On April 5, 2021, Smith entered an open guilty plea to two counts of voluntary manslaughter and four counts of arson — endangering persons. The persons who were endangered were the police officers who had entered the building to investigate the crime. The trial court accepted the plea as voluntary and deferred sentencing for preparation of a pre-sentence investigation report (PSI). At the June 30, 2021 sentencing hearing, the trial court noted that it had considered the PSI, victim impact statements, materials submitted by the defense, and Smith's statement to the court on his behalf. The trial court sentenced Smith to consecutive terms of 5 to 10 years' incarceration on each of the voluntary manslaughter convictions, followed by consecutive terms of 4 to 8 years of imprisonment on each of the arson counts.

Smith filed a timely post-sentence motion seeking withdrawal of his guilty plea and modification of the sentence, claiming it was excessive. At the August 23, 2021 hearing on the motion, the parties discussed the issue of whether Smith could receive multiple sentences for violating Section 3301, as this incident involved a single fire. The trial court deferred ruling on the motion pending the submission of briefs.

At the September 2021 hearing, the trial court denied Smith's motion and concluded that the separate sentences it had imposed on each arson count were lawful. Smith timely appealed from the judgment of sentence and he and the trial court complied with Rule 1925. *See* Pa.R.A.P. 1925(a)-(b). In its opinion, the court explained its rationale for the ruling as follows:

The Arson Endangering Persons statute at issue in this case specifically focused on the individual risk of death or serious injury caused to individual persons identified in the statute by the defendant's conduct. This Court believes that the unit of prosecution for this offense is the commission of an arson that specifically recklessly places another person in danger of death or bodily injury. The unit of prosecution is not limited solely to the commission of an arson, otherwise subsection(A)(1)(i) would be superfluous. On the contrary, the legislature intended that the unit of prosecution include consideration of the individual risk of harm caused by arson. As set forth in **Satterfield**,[2] it was "solely the involvement in an accident that triggers the obligation to stop and remain at the scene." **Id.** at 448. **In this case, it isn't the arson that triggers the crime**. To be found guilty of Arson Endangering Person, the statute specifically requires proof of both an arson and that an enumerated **person** be placed in danger of death or bodily injury from the arson. Accordingly, the unit of prosecution provides for separate counts if multiple persons are victimized by an arson. The proper interpretation of the statute, therefore, permitted this Court to impose separate sentences for each victim endangered by the defendant's conduct.

(**See** Trial Court Opinion, 4/06/22, at 6-7) (emphasis added; original emphasis maintained).

## II.

Smith's issue on appeal challenges the legality of the multiple sentences imposed on his arson convictions. Smith maintains that contrary to the trial court's assessment, the "unit of prosecution" for Section 3301(a)(1) is properly construed as each arson rather than each endangered person. Because Smith committed one arson by starting a single fire, he contends that

---

[2] **Commonwealth v. Satterfield**, 255 A.3d 438 (Pa. 2021) (discussed in detail **infra**).

- 4 -

his judgment of sentence as to three of the four arson counts should be reversed. (**See id.** at 23).[3]

## A.

We begin by observing that the best expression of legislative intent is found in the plain language of a statute. **See Commonwealth v. Peck**, 242 A.3d 1274, 1279 (Pa. 2020). "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S. § 1921(b). Additionally, "penal statutes are always to be construed strictly, 1 Pa.C.S. § 1928(b)(1), and any ambiguity in a penal statute should be interpreted in favor of the defendant." **Commonwealth v. Alexander**, 258 A.3d 474, 478 n.6 (Pa. Super. 2021) (case citation omitted).

In this case, we must consider what the General Assembly set as the "unit of prosecution" for a violation of Section 3301(a)(1). **Satterfield**, on which the trial court relies, is instructive. In **Satterfield**, our Supreme Court addressed the legality of the three sentences imposed on the defendant after he pled guilty to three counts of leaving the scene of an accident involving death or personal injury, codified at 75 Pa.C.S. § 3742.[4] The charges

---

[3] Because statutory interpretation raises a question of law, our scope of review is plenary and our standard of review is *de novo.* **See Commonwealth v. Arroyo**, 991 A.2d 951, 955 n.2 (Pa. Super. 2010).

[4] **§ 3742. Accidents involving death or personal injury**
*(Footnote Continued Next Page)*

J-S34036-22

stemmed from Satterfield's causing of a multi-vehicle crash that resulted in three fatalities. The Court determined that two of Satterfield's three sentences were illegal and in doing so explained:

> The unit of prosecution is the *actus reus* that the General Assembly intended to punish. Put otherwise, the unit of prosecution is the minimum conduct that must be proven to obtain a conviction for the statute in question. Only a single conviction and resulting punishment may be imposed for a single unit of prosecution. . . **To determine the correct unit of prosecution, the inquiry should focus on whether separate and distinct prohibited acts have been committed**.

*Satterfield*, *supra* at 445-46 (citations omitted; emphasis added).

The Court vacated the multiple sentences imposed on Satterfield based on the number of victims killed in the accident and held that he "may only be punished for one violation of Section 3742, regardless of the number of persons killed or injured." *Id.* at 451. Although the statute sets increased penalties for not remaining at the scene based on the severity of the consequences of the accident, (*i.e.*, where the accident results in only injury, the violator commits a first-degree misdemeanor, but when the accident

---

> **(a) General rule.**—The driver of any vehicle involved in an accident resulting in injury or death of any person shall immediately stop the vehicle at the scene of the accident or as close thereto as possible but shall then forthwith return to and in every event shall remain at the scene of the accident until he has fulfilled the requirements of section 3744 (relating to duty to give information and render aid). Every stop shall be made without obstructing traffic more than is necessary.

75 Pa.C.S. § 3742(a).

results in death, the defendant commits a second-degree felony), the Court nonetheless determined that "the statutory language unambiguously provides that the obligation to stop and remain at the scene results solely from the driver's involvement in the accident, regardless of the number of victims or the severity of their injuries." *Id.* at 449 (citations omitted) (describing the statute as "accident focused" rather than "victim focused."). Because there was only one accident scene at which Satterfield had a duty to remain, he violated Section 3742 once and, therefore, could only be sentenced for the single violation.

**B.**

Turning to the statute at issue in the instant case, the Crimes Code defines the offense of Arson - endangering persons in relevant part as follows:

**§ 3301. Arson and related offenses**

**(a) Arson endangering persons.**—

(1) A person commits a **felony of the first degree if he intentionally starts a fire** or causes an explosion, or if he aids, counsels, pays or agrees to pay another to cause a fire or explosion, whether on his own property or on that of another, and if:

(i) he thereby recklessly places another person in danger of death or bodily injury, including but not limited to a firefighter, police officer or other person actively engaged in fighting the fire.

18 Pa.C.S. § 3301(a)(1) (emphasis added).

The statute goes on to define the offense of Arson in various other contexts including starting a fire to a historic resource; starting a fire

endangering property; and multiple-related offenses, including reckless burning. **See id.** (grading arson of a historic resource and arson endangering property as second-degree felonies and reckless burning as a third-degree felony). The focus of the provision is on criminalizing the intentional starting of fire, and similar to the statute at issue in **Satterfield**, it provides for increases in grading as the level of severity of the consequences as the fire escalates.

Based on the plain language of Section 3301(a)(1), we conclude that the unit of prosecution or *actus reus* that the General Assembly intended to punish is the act of intentionally starting a fire. Contrary to the trial court's conclusion, the key element of the statute is not endangerment, which is addressed separately in the Crimes Code for which charges were not brought.[5] Although the language of Section 3301 concerning grading of the offense makes clear the legislature intended to view arson - endangering persons as a particularly egregious type of arson, the statute's key element is arson, not endangerment.

---

[5] **See** 18 Pa.C.S. § 2705, Recklessly Endangering Another Person (REAP) ("A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury."). Moreover, if arson would result in death of a person, in addition to the arson charge, nothing precludes the Commonwealth charging the person who perpetrated the arson with each death caused by the arson.

The trial court sentenced Smith to four consecutive terms of imprisonment for arson - endangering persons. However, because Smith set a single fire, he committed one prohibited act, **see Satterfield**, **supra** at 446, and, therefore, may only be punished for one violation of Section 3301, despite the presence of four police officers at the scene, making three of Smith's arson sentences illegal.

Accordingly, we reverse three of the arson convictions, vacate the judgment of sentence and remand to the trial court for resentencing, as our disposition may upset the trial court's overall sentencing scheme.[6]

Voluntary manslaughter convictions and one arson conviction affirmed; three arson convictions reversed. Judgment of sentence vacated. Case remanded for resentencing in accordance with this Opinion. Jurisdiction relinquished.

_____

[6] The Commonwealth relies on **Commonwealth v. Frisbie**, 485 A.2d 1098 (Pa. 1984) to support its position that Smith's sentence is legal. (**See** Commonwealth's Brief, at 9). In **Frisbie**, our Supreme Court examined the REAP statute and held that imposition of multiple sentences for that offense was lawful for the defendant's act of driving his vehicle through a crowded intersection, causing serious injury to nine pedestrians. However, given that the REAP statute on its face is expressly aimed at criminalizing Endangerment rather than a separate offense such as Arson, the analysis of its plain language is not controlling in this case.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/17/2022